Partridge *v.* Badger.

[MONROE GENERAL TERM, September 7, 1857. *Johnson, Welles* and *T. R. Strong,* Justices.]

———— ⚫ ————

PARTRIDGE, president, &c. *vs.* BADGER.

An allegation, in a complaint, that certain drafts were accepted by a corporation, by their treasurer, includes an averment of authority to the treasurer to accept the drafts; inasmuch as the company could not accept by him, unless he had such authority.

His acts would not be those of the company, unless they were authorized by the company. If thus authorized, they are, in legal effect, the acts of the company.

A corporation may, without special authority, make a note or draft, or accept a draft, for a debt contracted in its legitimate business.

It may make notes or drafts, or give its acceptances, to pay an indebtedness of the company to contractors, for labor performed. The restraining act has no application to such a case.

A corporation has incidental authority, when not specially restricted, to borrow money for any of its lawful purposes.

In an action against a corporation, upon its acceptances, proof, by the plaintiff, of a consideration, and that the acceptances were in the legitimate business of the company, is not necessary, in the first instance. After proof that the acceptances were made by the authority of, and therefore by, the company, the other facts essential to their validity will be presumed.

Authority from the board of directors must be strictly proved, but when it is proved, it may be assumed that there was a valid consideration, and proper purpose, for the acceptance.

Partridge *v.* Badger.

In an action against a stockholder of a corporation, to render him liable for the debts of the company, the stock subscription paper, signed by him, is relevant and competent evidence, upon the question whether the defendant was a stockholder.

It is competent for the plaintiff, in such an action, to prove, by the testimony of witnesses who were present at an election of directors of the company, who were elected. The books of the company, if they contain a record of the election, although proper, are not the sole evidence upon that point.

The fact of who were the directors, may also be proved by the testimony of witnesses as to who acted, as such.

The certificate of the persons who acted as inspectors, at an election of directors, made at the time of the election, is competent and proper evidence of what was done, on that occasion, *it seems.*

Where the election of a person as treasurer of a corporation is irregular, but he afterwards acts, and is recognized by the company, as treasurer, his acts as such, within the scope of his authority, are binding on the company.

And where one acts as treasurer, and is recognized as such by the company, his report and statement of the financial condition of the company, proved to have been accepted, and adopted, by the board of directors. is competent and material evidence, as an admission, by the company, of the facts therein stated.

The authority of a treasurer to accept drafts may also be proved by showing that it was the practice of that officer, with the assent of the board of directors, to accept, and that the acceptances in question were recognized and treated as those of the company.

Such acceptances will be recognized by the directors' accepting and adopting, without objection, the report and statement of the treasurer, in which the acceptances are expressly mentioned among the outstanding liabilities of the company.

In an action against a stockholder, upon acceptances of the corporation, it is proper to prove the origin, history and objects of the drafts and acceptances, by showing what was done between officers of the company and contractors, in connection with proof of the ratification of the drafts and acceptances.

Where it is proved by the secretary having charge of the papers of a corporation, that by direction of the president he delivered a book of minutes to an attorney, and that afterwards he called at the office of the attorney, and with the latter searched there for it, without success, and the president testified that he had also inquired there, for it, and did not know where it was, it was *held* that this was reasonable evidence of the loss of the book, and was a proper foundation for the introduction of secondary evidence of its contents, without examining the attorney in regard to the loss of the book.

MOTION for a new trial, upon a case. The defendant was a *stockholder* in the Niagara Falls Hydraulic Company, from its organization down to the time of trial, holding 750

shares of $100 each, or $75,000 of its capital stock. He was also a *director* of the company during the same time. No part of the capital stock of the company was ever paid in, as required by sections 10 and 14 of the act. (*Laws of* 1848, *ch.* 40.) And no report of the affairs of the company was ever made or filed, as required by section 12 of said act. In April and May, 1854, while the defendant was such stockholder and director, the company, by Caldwell, their treasurer, accepted six several bills of exchange, drawn on the company by Whitney, the engineer on their works at Niagara Falls, for the purpose of paying certain amounts due from the company to contractors on their works. These drafts were passed to the contractors, and were by them negotiated to the plaintiff, an individual banker, who recovered a *judgment* on said drafts against the company, and after the return of an execution on such judgment unsatisfied, commenced this action to enforce the liability of the defendant as such stockholder and director, to the plaintiff, for said debt.

The action was tried at the Seneca county circuit, September 23d, 1856, before Justice E. DARWIN SMITH and a jury. After the opening of the case by the plaintiff's counsel, the counsel for the defendant moved to dismiss the complaint, on the ground that it did not contain facts sufficient to constitute a cause of action. 1st. That it was not averred, and did not appear, that the person who was alleged to have accepted the drafts, had any authority so to do. 2d. That the complaint showed that the drafts were accepted for discount and were void, as a violation of the restraining act. The motion was denied, and the defendant excepted. The plaintiff offered in evidence a certified copy of the certificate of organization, and articles of association. The court allowed the copy certificate and signatures and acknowledgments thereto attached, to be read, and the same were read to the jury. The defendant was one of the signers of this certificate. His signature was proved. The plaintiff also offered in evidence the paper containing the subscriptions for stock. The defendant objected to it, on the ground that the same was irrelevant, and purported to relate

Partridge *v.* Badger.

to another matter; also that it was incompetent. The objection was overruled, and the paper received. The defendant's name was subscribed to this paper, for 750 shares of $100 each.

Ezra S. King was examined as a witness for the plaintiff. He testified that he was present at an election of directors of the company, in April, 1854. Being asked who were present and voted, the question was objected to, on the ground that the minutes were the best evidence. Objection overruled, and witness gave the names of some who were present and voted; among whom was the defendant. Being asked who were elected trustees or directors, a similar objection was made, and overruled, and the witness testified that the defendant and six others, viz. Caleb S. Woodhull, Walter Bryant, Stephen M. Allen, Alfred Ashfield, Theodore Dunn and Abram Wakeman were elected; that there was a memorandum made, and he produced the original certificate of election, signed by W. Bryant and E. S. King, who acted as inspectors. This was objected to, as incompetent, · but was admitted in evidence. The witness was asked if the defendant acted as a director in 1853, 1854 and 1855, and after this election. Question objected to, but allowed, and witness answered in the affirmative. He was asked who acted as secretary in 1853, 1854 and 1855. Objected to as incompetent; objection overruled, and evidence received. Witness testified that he acted as secretary, during those years. That the defendant knew of his thus acting. That the defendant and the other persons named in the certificate of election acted as directors, during those years. ˙This testimony was also objected to. Witness had no knowledge of any report of the affairs of the company being made in January, 1855. That the last meeting of the board was held in the latter part of January, 1855. The persons who last acted were Caleb S. Woodhull, D. D. Badger, S. M. Allen and Walter Bryant; witness acted as secretary. This testimony was taken under the objection of the defendant, and his exception to its admission. Witness did not know of any election since April, 1854. Being shown a paper, he testified that he had seen it before and knew the signatures of it to

be genuine. It came from the office of the company where it originated. No one brought it to him; it was in his custody as secretary of the company; it was returned to him after being signed; the president took it after it was drawn up, to have these men sign it; it was half an hour or an hour before it came to witness' hands; witness did not think he left the office; Messrs. Allen and Bryant were there at the time. Mr. Woodhull signed it immediately after it was drawn; Messrs. Bryant and Allen were present when he signed it; witness did not know whether Mr. Badger signed there, or in his office; witness went to his office in Duane street, two or three times, to get him to sign it; it was signed by Mr. Badger, in his (Mr. Badger's) office; no one was with the witness then. The plaintiff here offered to read the paper in evidence. Objected to, as incompetent. Overruled. Exception. The paper was read as follows:

"Resolved, that the resignation of Walter Bryant, as treasurer of the Niagara Falls Hydraulic Company, be, and the same is hereby accepted. January 5, 1854.    C. S. WOODHULL.

WALTER BRYANT.
STEPHEN M. ALLEN.
D. D. BADGER."

"Resolved, That W. E. Caldwell be, and he is hereby appointed treasurer of the Niagara Falls Hydraulic Company, in place of Walter Bryant, resigned.    C. S. WOODHULL.

WALTER BRYANT.
STEPHEN M. ALLEN.

January 5, 1854.                    D. D. BADGER."

The witness was asked who acted as treasurer, after January 5, 1854. This was objected to and overruled, and exception taken. Witness answered, W. E. Caldwell; he acted for several months, up to July, and after, the witness thought; he had known him to accept drafts as treasurer of the company. That he was succeeded by Samuel B. Tuck; "the signature to the paper now shown to me is Mr. Tuck's; it was presented to the board of directors by Mr. Tuck; Mr. Tuck handed it to me." Question. "Was the paper presented to the board?" Objected to, as the

minutes must be produced. Overruled, and exception taken. Answer, "It was." Who was present? Objected to, as above, and overruled. Exception. Witness answered, "The directors were all present; I think it was in January, 1855." The plaintiff offered to read the paper in evidence. Objected to by defendant, because the paper was not proved to be official, or from an officer, or how it originated; and as irrelevant and incompetent. Objection overruled; and the defendant excepted. The paper purported to be a "Statement of the indebtedness of the Niagara Falls Hydraulic Company," and included the drafts and acceptances on which this action was brought. It was signed by Tuck as treasurer of the company. The witness further testified that the treasurer kept an office in Wall street; and the transfer book of the company being shown to the witness and identified by him, he testified that it did not appear therefrom that the defendant's stock had been transferred. The plaintiff then read in evidence the judgment roll in the action brought by him against the company, the execution issued thereon to the sheriff of Niagara county, and the return of the sheriff thereon that he could find no property, belonging to the company, whereon to levy. W. E. Caldwell, a witness for the plaintiff, testified that he acted as treasurer of the company from January, 1854, to the middle or last of May, and had his office in Wall street; that he accepted and paid drafts upon him as treasurer; could not tell how many, without reference to his books; a draft of January 24, 1854, he had not; did not know who drew it; he accepted it; it was for $4000; he had accepted about twenty-four; the whole amount was $82,687.10. The foregoing testimony taken under defendant's objection and exception. Witness accepted five others, of which he had no memoranda on his book; he paid fourteen, amounting to $66,887.10; the last he accepted was early in May; two were accepted in April, and five in May; those that were drawn upon him he paid by drafts on Bryant, Allen & Co. of Boston; sometimes he drew as treasurer, sometimes individually; he received no money from any other source, and paid out none; Walter Bryant and S. M. Allen were two members of the firm of Bryant, Allen & Co. The draft.

HARVARD LAW SCHOOL LIBRARY

on which judgment was taken, referred to in the complaint, were shown witness.  He testified that these drafts were all accepted by him while he was acting as treasurer; that he knew the signature of Mr. Woodhull, and that was his on the drafts; did not know Mr. Whitney's signature; that he recognized the papers shown him, and knew the signature to be Mr. Woodhull's. The plaintiffs offered the papers in evidence.  Objected to, and objection overruled.  Exception by defendant.  The papers were read in evidence as follows :

" Office of the Niagara Falls Hydraulic Company,
*New York, April 28th,* 1854.

W. E. Caldwell, Treasurer : You will please accept the drafts Charles Whitney on you as treasurer, viz :

April 28, 2 months' order, C. S. Woodhull,  .      $1000
"    28, 3  "        "        . Do.  . . . . .  1000.

One thousand dollars each, amounting to two thousand dollars, and the same will be charged to contractors' account.

C. S. Woodhull, President of N. F. Hydraulic Co."

" *New York, May 1st,* 1854.

W. E. Caldwell, Treasurer Niagara Falls Hy. Co.  Please accept in blank or otherwise, any drafts that may be presented, drawn by Charles Whitney, and bearing my personal indorsement, as they are authorized by the board of directors.

C. S. Woodhull, President, &c."

Witness had had correspondence with Mr. Whitney, and that is all he knew about his signature ; some of the other drafts were drawn by Whitney ; five drawn by him on the witness he paid, amounting to $23,000.   The witness did not recollect what the drafts of Bryant, Allen & Co. were drawn for; he had advices from them to accept them, and accepted them ; he drew on Bryant, Allen & Co. to pay them ; witness had no definite direction from any one else to accept; had no funds to pay with, except by drawing back on them; he had general authority from Bryant, Allen & Co., and these drafts were paid by drawing on them.   The body of the letter dated 28th April was in witness' handwriting and was drawn in his office ; King called on him with two drafts of Whitney's; witness requested some

Partridge *v.* Badger.

authority in this instance, and it was provided; he drew it up and the president signed it; and on this authority witness accepted it; that was the only direct authority, and witness' knowledge that Mr. Whitney was the engineer of the company. The other letter of May 1st was drawn in witness' office by him, and taken to Mr. Woodhull; Mr. Allen came in and wanted him to accept five drafts in blank; witness declined to do it without the authority of the president; and he got this signed. Mr. Whitney had no funds in witness' hands, or in the hands of the company; the last drafts were in blank, when witness accepted them; they were without any amounts, or date, or time of payment; they are the four drafts in this suit, dated May 1, May 6, April 20, and April 18; three of these appear to be filled up in Allen's handwriting; the others, witness could not state in whose; gave them to S. M. Allen; he did not know whether the blank drafts had Whitney's name when witness signed; he accepted other drafts; did not know by whose authority. There was no funds in the treasury when the witness came in office. The plaintiff offered the drafts in evidence. Objected to, as no evidence was given of authority to accept; no evidence of drawer's signature, and as to four that they had been altered since accepted, and no authority shown to fill them up; also as incompetent; and as to draft of April 28, at three months, that no such draft was alleged in the complaint. Objection overruled, and exception by defendant. The drafts were then read. The first was in the following form:

" $1000.                NIAGARA FALLS HYDRAULIC Co.
                        *Niagara Falls, April 28th,* 1854.
    Two months after date, pay to order of C. S. Woodhull, one thousand dollars, value received.
                    Your obedient serv't,
                            CHARLES WHITNEY."

To W. E. Caldwell, *Treasurer,*
        40 Wall street, New York.

    *(Indorsed)* C. S. Woodhull, R. G. Nellis, Latham & Gage, F. B. Latham, Edw'd Mynderse.

*Accepted. W. E. Caldwell, Treasurer Niagara Falls Hydraulic Co.*

The others were for different amounts and bore different dates, but were similar in form to the above.

Caleb S. Woodhull, testified that he was president of the company; that he did not sign any such paper as mentioned in section twelve of the act of 1848; never made any such report. That he acted as president, until 1855. No one claimed to act as president but him. That the drafts in suit were all made to provide funds for the payment of the contractors on the works of the company. A portion of them were made in blank, and accepted in blank; then Mr. Allen took them; he went to the falls with them from New York; Latham, Gage & Co. were the contractors; the work was, constructing a canal at the falls.

Ezra S. King, recalled by the plaintiff; testified that there was one of these drafts that he had not seen before; the rest he had, and knew the circumstances under which they were made; Messrs. Allen, Woodhull and Whitney had been at the falls; there was an interview between Messrs. Whitney, Latham and Woodhull in New York, in regard of the indebtedness of the company to the contractors; in consequence of that interview Mr. Allen came to New York; at the second interview Mr. Allen, Mr. Latham and Mr. Woodhull were present; that interview related to raising money for the contractors at the works. There were two drafts of $1000 each drawn, dated April 28th; and a time was stipulated when Mr. Allen should go to Niagara Falls. Witness saw Mr. Allen have these blank drafts at the office of the company; he went out to the falls with Allen, Dunn and Tuck; they went to Mr. Whitney's office; Messrs. Allen, Dunn, Latham, Gage, Whitney and witness were present; the book of the engineer was produced, and the amount figured up. The drafts were given to the contractors; all the drafts except the two $1000 ones, were filled up by Mr. Allen after the figuring, and were then given to the contractors; they were given for the debt of the company. They were signed by Whitney there; they were filled up for the amount of the indebtedness then ascertained by the parties; these contractors were Latham and Gage, who were building the canal;

Partridge *v.* Badger.

witness was secretary and had brought all the books in his possession; there was a book of minutes; that book was not in his office when he came; he looked for it, and could not find it in his office; he had searched elsewhere besides, and could not find it; that was the book in which the resolutions of the directors were kept; that it was over a year since witness ceased to do business as secretary; he believed he had had charge of the papers until the present time; the safe of the company remains in the old office; the office was vacant; there were two keys to the office and safe; witness had one, and Mr. Woodhull had one; Mr. Allen did not take the minute book away; witness took it away from his office to Mr. Joseph S. York's office; he is a lawyer in New York; witness left it there under the direction of Mr. Woodhull; witness took the book to Mr. York, in June, 1855; delivered it to Mr. York personally, and told him who sent it; had not seen it since; witness looked in his office, because he was subpœnaed to bring the book; also looked in York's office. The witness and Mr. York looked for it in his office, and could not find it. That at the meeting of the board of trustees or directors on the 30th of January, 1855, the report of Mr. Tuck, treasurer, was accepted and adopted. That the report was made in response to a resolution calling for it. Mr. Woodhull testified that he had called upon Mr. York and endeavored to get the book of minutes, but did not get it, and did not know where it was. The amount of the drafts and in interest was conceded to be $14,110.03. When the plaintiff rested, the defendant moved for a nonsuit on the grounds: 1. That there was no evidence of the defendant being a stockholder in said company, or a director. 2. No evidence that Mr. Caldwell had authority to accept the drafts. 3. No legal evidence that the drafts were given for indebtedness. 4. The treasurer could not accept blank drafts. 5. That the drafts as declared upon, were not as accepted, and there was no evidence of authority to fill them up. Motion denied. Exception by defendant. The case was submitted, and his honor charged the jury that the action was to charge the defendant as a stockholder; that it was necessary to show an organi-

zation or attempt; the liability depends upon the question whether the drafts are debts of the company; the capital stock was never paid up. Was there an actual debt? Corporations can make notes for their ordinary business; they may make notes for that purpose. There was no direct proof of an original authority to accept these drafts. There was no affirmative proof on that subject; but many binding acts are to be proved by, or may be inferred by a jury from, contemporaneous and subsequent acts. If they thought the drafts were made for the benefit of the corporation, and for the payment of its just debts, the jury were at liberty to infer from the acts of the directors and officers, that it was done by the authority of the corporation, and if there was a subsequent affirmance by the board of directors, it was equal to an original authority; if the treasurer, with the knowledge and assent of the officers, or of the board, accepted the drafts, it was equal to an original authority. That the authority might be inferred from the acts of the officers and directors, and the acts of the officers and directors were proper to be taken in connection with other acts as evidence of an original authority. The defendant excepted to that part of the charge which stated that the acts of the officers were to be taken as evidence of original authority. The defendant requested the court to charge, 1. That there was no evidence that the defendant was a stockholder or director in said company. 2. That there was no authority proved, for Mr. Caldwell to accept the drafts. 3. That the president had no right to give any authority. 4. That there was no evidence that the drafts were given for a debt of the company. 5. That the treasurer had no right to accept drafts in blank. 6. That the plaintiff could not recover on the drafts which were accepted in blank, inasmuch as when accepted they created no debt of the company, and there was no evidence of authority to fill them up. The court refused to charge as requested, on each and every proposition, to which refusal the counsel for the defendant excepted. The jury found a verdict for the plaintiff, for $14,110.03. The court ordered the case to go directly to the general term, on the exceptions.

Partridge *v.* Badger.

*B. Skaats*, for the plaintiff.   I. This motion is founded upon a case, containing the whole evidence, and all the exceptions taken during the trial, and is not a bill of exceptions, properly so called.   Therefore, although it should appear that improper evidence may have been, in some few instances, admitted upon the trial, the verdict will not be disturbed, if the court is satisfied that substantial justice has been done ; and that, excluding the improper evidence, the same verdict ought to have been and would have been, given.   (*Murray* v. *Smith*, 1 *Duer*, 412.)

II. The motion to dismiss the complaint was properly denied. (*Allen* v. *Patterson*, 3 *Seld.* 478.   *Steph.* on *Pl.* 220, 221. 1 *Chit. Pl.* 640.   *Hays* v. *Heseltine*, 2 *Camb.* 604.   *Chitty on Bills, Barb. ed.* 585, 586.)   *First.* It was not necessary to aver in the complaint that the person who is alleged to have accepted the drafts *had authority* to do so.   (1.) It is stated in the complaint that *the drafts were duly accepted by said Niagara Falls Hydraulic Company by their treasurer aforesaid.*   This was sufficient.   (2.) Before the code, it was only necessary to aver that a contract made by an agent was the act of the principal, without alluding to the agency ; the act of the agent being, in legal effect, the act of the principal.   And the same rule applied to the acts and contracts of corporations, as well as to those of individuals.   (*Moss* v. *Oakley*, 2 *Hill*, 265. *Moss* v. *McCullough*, 5 *id.* 136.   *S. C.* 7 *Barb.* 280.)   (3.) The language of the code and that of the text books under the former system, so far as it requires a statement of *facts* and not of *legal conclusions*, is almost precisely identical.   (*Code*, § 142.   *Chit. Pl.* 11*th Am. ed.* 213.   *Allen* v. *Patterson*, 3 *Seld.* 478.)   (4.) The code may require that where a contract is made by an agent, it should be so stated, as has been done in this case ; for the complainant not only *avers an acceptance* by the company, *but points out the agent* through whom the company acted.   (*Dollner* v. *Gibson*, 3 *Code R.* 153.   *St. John* v. *Griffith*, 1 *Abbott's Pr. R.* 39.)   (5.) But the code does not require that, *in addition to stating the fact of agency*, the pleader should aver that the agent *had authority to act.*   That would be an averment of a *conclusion of law*, or at best, an

unnecessary repetition of a fact already stated. (6.) The complaint would have been good had it merely set out copies of the drafts, without any averment that they were accepted by the company. (*Andrews* v. *Astor Bank*, 2 *Duer*, 629.) (7.) But the complaint also avers the recovery of a *judgment* against the company on the drafts so accepted. This, without more, is a sufficient averment of a debt against the company, *prima facie*, at least. (*Slee* v. *Bloom*, 20 *John*. 682. *Moss* v. *Oakley*, 2 *Hill*, 265. *Moss* v. *McCullough*, 7 *Barb*. 280. *Peckham* v. *Smith*, 9 *How. Pr. R.*, 436.) *Second*. The complaint does not show that these drafts were accepted *for discount*, or that they are void as a violation of the restraining act. (1.) It does not appear that these drafts were *discounted by the company*, or that they were *bought* or *sold* or *issued upon loan, or for circulation, as money*. (1 *R. S.* 4th ed. *p*. 1172, § 4.) (2.) The description of the drafts in the complaint negatives any inference that they were intended to be loaned or circulated as money. (*Safford* v. *Wyckoff*, 4 *Hill*, 451.) (3.) Even were it true that these drafts had been accepted in violation of the restraining act, this would be no defense as against the plaintiff, who is a holder in good faith for value, and without notice. (*Safford* v. *Wyckoff, supra*.) *Third*. These objections to the complaint should have been raised by demurrer. The court will not favor the practice of raising technical objections on a mere question of pleading, for the first time, upon the trial.

III. The copy of the certificate of association, certified by the clerk of Niagara county, is evidence of the facts therein stated. (*Laws of* 1848, *ch*. 40, § 9.) As it was certified by the secretary of state, and authenticated by his seal of office, it was also evidence, equally and in like manner, as the original would have been, had it been produced. (1 *R. S.* 4th ed. 384, § 4. *Id*. 387, § 27.) It was evidence, therefore, not only of all the facts therein stated, but also that it was *subscribed* and *acknowledged* by Badger and his associates. But this is not important, as Badger also subscribed for stock. (*Laws of* 1848, *ch*. 40, § 2.) Even had the company been defectively organized,

Badger could not take advantage of it. (*Eaton* v. *Aspinwall*, 13 *How. Pr. R.* 189.)

IV. The stock subscription list did not purport to relate to another matter, but clearly referred to the Niagara Falls Hydraulic Company, and was relevant and competent evidence. That it did refer to such company was a question of fact, decided by the jury.

V. The evidence given to show that Badger was elected a director in the spring of 1854, was competent and sufficient. (1.) The inspector's original certificate of such election was the best evidence, as the book of minutes contained, if any thing, a mere transcript therefrom. (2.) The acts of the persons attending such election were independent facts, and were properly shown as cumulative testimony. (*Ang. & Ames on Corp.* 5th *ed.* 180, *and cases cited.*) (3.) Badger *acted* as such director during the whole time the company was in existence. And he is concluded by his own acts from disputing the fact of his election, or its regularity. (4.) The absence of the book of minutes was afterwards, during the trial, satisfactorily accounted for. (5.) Even had it been shown that Badger was a *director*, his liability as a *stockholder* would still remain.

VI. The evidence that King was secretary, and Caldwell treasurer, was competent and sufficient. (1.) They both acted as such for a long time, with the knowledge and assent of the company and its directors; their acts were recognized and adopted by the company, and the evidence was given with the view of showing these facts. (2.) Caldwell was appointed treasurer by an instrument in writing, which, though it may not amount to a corporate act of itself, creating an original authority, yet as it was signed by a majority of the board of directors, (Badger among the number,) was evidence tending to show that he was adopted and recognized as such treasurer by the directors. (3.) Badger certainly cannot object that Caldwell was not treasurer, after holding him out to the world as such. (4.) As the appointment of an agent of a corporation may not always be evidenced by written vote, it is now the settled doctrine in this country, that it may be implied from the adoption

or recognition of the acts of the agent, by the directors or the corporation. (*Story on Agency,* 3*d ed. p.* 57, *and cases cited ; and point* 8.)

VII. The report of Tuck, the treasurer, who succeeded Caldwell, was properly admitted in evidence. (1.) It was an official document presented to the board of directors, upon their call, and was acted upon by them, and approved and adopted. (2.) It was produced upon the trial, from its usual and proper repository. (3.) It was competent for the purpose of showing that Caldwell was treasurer, and also that he had authority to accept the drafts, and that his acts were ratified by the board of directors.

VIII. All the evidence offered and admitted to show that the drafts set out in the complaint were duly accepted by the company, by their authorized agent, and in the regular course of their legitimate business, was competent and sufficient. (1.) The evidence to show the authority of Caldwell, their treasurer, to accept the drafts, was mostly directed to show that his acts in that particular were permitted, recognized, adopted and confirmed by the corporation or its directors, and that he was held out to the world as such authorized agent. (2.) If the evidence had any tendency to prove such a state of facts, it was competent; whether it did actually prove Caldwell's authority to accept, was a question of fact for the jury. (3.) It was not necessary that any original authority to accept the drafts, written or otherwise, should be produced or shown. A vote or resolution appointing an agent need not be entered on the minutes or records of the corporation. (*Angell & Ames on Corp.* 5*th ed.* 315, *and cases cited.*) (4.) As the vote or resolution appointing an agent need not be entered on the books or minutes of the corporation, such appointment, and the authority of the agent to act, like that of the agent of a natural person, may be implied from the permission or acceptance of his services, from the recognition or confirmation of his acts, or in general from his being held out as an authorized agent of the corporation. (*Ang. & Ames on Corp.* 5*th ed.* 313, *and cases cited. Conover* v. *Mu. Ins. Co.,* 1 *Comst.* 290. *Lohman* v. *N. Y. and E. R. R. Co.,* 2 *Sandf.* 39–52. *Beers* v. *Phœnix Glass*

*Co.,* 14 *Barb.* 358.   *Bank of U. S.* v. *Dandridge,* 12 *Wheat.* 83.   *Moss* v. *Rossie Lead Mining Co.,* 5 *Hill,* 137.)   (5.) If the directors of a corporation, no matter *whether through inattention* or otherwise, suffer its subordinate officers to pursue a particular line of conduct for a considerable period, without objection, they are as much bound to those who are not aware of any want of authority, as if the requisite power had been directly conferred. (*Ang. & Ames on Corp.* 5*th ed.* 339, 340, *and cases cited.   Beers* v. *Phœnix Glass Co.,* 14 *Barb.* 358. *Hoyt* v. *Thompson,* 1 *Selden,* 320.)

IX. In the hands of a *bona fide* holder, a draft accepted by a corporation *will be presumed* to have been accepted in the regular course of its legitimate business. The burden of proving the contrary lies with the defendant. (*Ang. & Ames on Corp.* 273, 284, 285, *and cases cited.   Ch. Walworth and whole court, in Safford* v. *Wyckoff,* 4 *Hill,* 442.) The stockholders of a joint stock corporation are *principal debtors,* not merely *sureties* for the debts of the corporation. They are *partners,* and are subject to the same rules of evidence which affect the relations of partners to each other and to strangers. (*Corning* v. *McCullough,* 1 *Comst.* 47.   *Moss* v. *McCullough,* 7 *Barb.* 295.   *Harger* v. *McCullough,* 2 *Denio,* 123.) A note or bill of exchange given in the name of a partnership by one of the partners, or by any other agent of the firm, will, in the hands of a *bona fide* holder, be presumed to have been given in the regular course of the business of the firm. (*Chit. on Bills,* 11*th Am. ed. p.* 39.) It was therefore not necessary, by the strictest rules of construction, either to allege in the complaint, or to prove on the trial, that the drafts in suit were given by the company in the regular course of its business.

X. But it was clearly proved on the trial that the drafts were accepted by a duly authorized agent of the company, and in the regular course of its business, that is to say, to pay contractors on their works for services already performed. It is, then, merely a question whether the evidence was admissible under the pleadings, or whether it was a variance, and if a variance, whether the defendant made any proof that he was misled.

(1.) The evidence was admissible, as has been shown in point second, subdivision first, and point ninth above. (2.) As the complaint alleged that the drafts were *duly* accepted by the company by their treasurer, there was, if any, but a very slight variance between the pleadings and proof. (3.) If there was any variance, it was not *material*, as the defendant made no proof that he was *misled* thereby. (*Code,* § 169.) The court, therefore, rightfully disregarded it, and directed the fact to be found according to the evidence. (*Code,* § 170. *Catlin* v. *Gunter,* 1 *Kernan,* 374.)

XI. The drafts were properly admitted, and read in evidence. (1.) The evidence of Caldwell's authority to accept for the company, as has been before shown, was full and complete. (2.) The acceptance admitted the genuineness of the drawer's signature, and his authority to draw. (*Story on Bills,* 2d ed. § 113.) Besides, the proof of the drawer's signature was afterwards supplied. (3.) The four drafts were not *altered* after acceptance. They were not, perhaps, *complete* until the amounts were filled in ; but they were filled up by competent authority, and in the regular course of the business of the company. The filling up was not an *alteration,* but a *completion* of the drafts. Until the contract is complete, and has become an available security, an alteration could not vitiate the drafts, even after acceptance. (*Chitty on Bills,* 11*th Am. ed.* 186.) And an acceptance on a blank piece of paper is good. (*Story on Bills,* 2*d. ed.* § 250.) (4.) The draft of April 28th, at three months, being described in the complaint served, as at four months, was a mere clerical error, and a variance by which defendant was not misled.

XII. All the foregoing questions, as to whether the drafts were accepted by competent authority and in the business of the company, and as to whether the testimony offered to prove the same was admissible under the pleadings or otherwise, are immaterial and unimportant, if the *judgment* recovered against the company on these drafts and alleged in the complaint, is *prima facie* evidence, in this action, of a *debt* against the company.

XIII. The judgment was of itself, and without further proof,

*prima facie* evidence, against a stockholder, of a debt against the company. (*Slee* v. *Bloom*, 20 *John.* 682.   *Moss* v. *Oakley*, 2 *Hill*, 265.   *Moss* v. *McCullough*, 7 *Barb.* 280.   *Peckham* v. *Smith*, 9 *How. Pr. R.* 436.)   It is clearly shown by the decision of the supreme court in *Moss* v. *McCullough*, (7 *Barb.* 280,) that the ruling of the court of errors in the same case, (5 *Denio*, 567,) does not conflict with this proposition.   The stockholders of a joint stock corporation being *partners*, (see *Point Ninth, above*,) a judgment against the company is evidence against a stockholder, upon the same principle that a judgment against a firm is evidence against its individual members.

XIV. There was sufficient evidence given of the loss of the book of minutes of the company, to authorize evidence of its contents.   *First.* The plaintiff made every effort, by subpœna to the secretary and notice to the defendant's attorney, to produce it on the trial.   A party will only be held to a *reasonable diligence* in endeavoring to produce or account for a book. (4 *Cowen & Hill*, 440.)   *Second.* Mr. King, the secretary, thoroughly searched the office of the company where the book was usually kept, and he and Mr. York both searched Mr. York's office, where it was at one time left, and could not find it. (1.) The rigor of the old common law rule, in this respect, has been much relaxed.   The non-production of instruments is now excused, upon grounds more broad and liberal than were formerly admitted. (*Livingston* v. *Rogers*, 1 *Caines' Cas.* xxvii.; *S. C.* 2 *John. Cas.* 488.)   (2.) Evidence which induces a fair presumption of a loss will be enough.   It will usually suffice that the paper has been sought for where it might be supposed likely to be found, or was usually kept, and that the search was fruitless. (4 *Cowen & Hill*, 440.)   (3.) King's testimony as to search in York's office was not hearsay, but was *original* evidence of a search, made by York himself.   (4 *Cowen & Hill*, 444–5, *and cases cited.*)   *Third.* The defendant was notified to produce the book and did not produce it.   This was sufficient to let in secondary evidence of its contents. (*Elmes* v. *Ogle*, 2 *Eng. L. and Eq. Rep.* 379.)   *Fourth.* Whether the absence of the book was sufficiently accounted for, was a question addressed to the

discretion of the court, and its decision will not be disturbed, unless clearly wrong. *Fifth.* The only evidence of the contents of the book given was as to what action was taken on the report of Tuck, the treasurer. And this evidence could be stricken out, without impairing the plaintiff's right to recover.

XV. The verdict was right in all respects, and should be sustained.

*D. T. Walden* and *B. Davis Noxon*, for the defendant. I. The complaint does not state facts sufficient to constitute a cause of action. The defendant is only liable for the debts of the company. (1.) The judgment recovered was by default, and is not even "*prima facie*" evidence of an indebtedness by the company, as against a stockholder. The action is founded on the claim and not on the judgment. (*Moss* v. *McCullough*, 5 *Hill*, 131, 135, 136. *Douglass* v. *Howland*, 24 *Wend.* 35, 59. *Bailey* v. *Bancker,* 3 *Hill,* 188, 192. *Jackson* v. *Griswold*, 4 *id.* 522. *Corning* v. *McCullough*, 1 *Comst.* 47, *per Bronson, J.,* 76. *McCullough* v. *Moss*, 5 *Denio*, 567. *See also Moss* v. *McCullough*, 7 *Barb.* 279.) (2.) The drafts were the claim alleged against the company, and it appears they were not the acceptances of the company, there being no averment of authority in the treasurer to accept; or that they were accepted for the benefit of the company. These averments were necessary to make the drafts the obligations of the company. (*Moss* v. *Livingston*, 4 *Comst.* 208, *Brockway* v. *Allen*, 17 *Wend.* 40. *Pentz* v. *Stanton*, 10 *id.* 276. *N. E. Marine Ins. Co.* v. *De Wolf*, 8 *Pick.* 56. *Rice* v. *Grove*, 22 *id.* 158. *Story on Agency,* § 270. *Long* v. *Coburn*, 11 *Mass. R.* 97. *Maine* v. *Chandler*, 9 *id.* 335. *Dispatch Line* v. *Bellamy Manuf. Co.*, 12 *N. Hamp. Rep.* 229. *Barker* v. *Mech. Ins. Co.*, 3 *Wend.* 94. *Halstead* v. *The Mayor &c.*, 3 *Comst.* 430. *McCullough* v. *Moss*, 5 *Denio*, 567. *Benedict* v. *Lansing*, *Id.* 284. *Mech. Banking Asso.* v. *Spring Valley Shot Co.*, 13 *How. Pr. R.* 227. 1 *Chit. Pl.* 334, 335, 336. *ed.* 1833.) (3.) The complaint shows that the drafts were indorsed, then accepted and delivered to the plaintiffs, and discounted by him. This was their in-

ception ; and if the acceptance was the act of the company, they were issued in violation of the restraining act, and are void. (1 *R. S. 4th ed.* 1172, § 4.) It was " *upon loan.*" (*Manhattan Co.* v. *Osgood*, 15 *John.* 162.   *Knox* v. *Goodwin*, 25 *Wend.* 643.   *Ketchum* v. *Barber*, 4 *Hill*, 227 *to* 229, *per Nelson, Ch. J. Cram* v. *Hendricks*, 7 *Wend.* 571, 579, 580, 581, 586.   *Gunther* v. *The Farmers' and Mechanics' Bank*, 1 *Peters*, 37.   *Munn* v. *The Comm. Co.*, 15 *John.* 44, *per Curiam*, 55, 6 .   *N. Y. Life and Trust Co.* v. *Beebe*, 3 *Selden*, 364.   *Woodworth on Joint Stock Co.*, 48.   *Ib. Appendix*, 18, 31, *note.   Act* 3 *and* 4  *Wm.* 4, *ch.* 98, § 3.   *Bissett on Part.* 222.) For " *circulation as money.*" (*Safford* v. *Wyckoff*, 1 *Hill*, 14, *per Cowen, J. Smith* v. *Strong*, 2 *id*, 241.   *Bank of Orleans* v. *Merrill, Id.* 295.)

II. The subscription paper was *irrelevant ;* it purported to relate to another organization.   It was incompetent ; the liability depending on the defendant being a stockholder.   (*Laws of* 1848, *p.* 56, § 10.   *Jenkins* v. *Union Turnpike Co.*, 1 *Caines' Cas.* 86.   *Tracy* v. *Yates*, 18 *Barb.* 152.)

III. The minutes of the corporation are the best evidence to prove the election of officers, what occurred at the election, and also the actions and doings of the board of directors ; and the exceptions to other evidence was well taken.   (2 *Starkie's Ev.* 695.   *Owings* v. *Speed*, 5 *Wheat.* 420.   *Meeker* v. *Van Rensselaer*, 15 *Wend.* 397.   *Highland Turnp. Co.* v. *McKean*, 10 *John.* 154, *per Curiam*, 156.   *Whitman* v. *Granite Ch.*, 11 *Shepley*, (24 *Maine*,) 236.   *Clark* v. *The Farmers' Woolen Manuf. Co.*, 15 *Wend.* 256.   *Thayer* v. *Middlesex Mut. Ins. Co.*, 10 *Pick.* 326.   *The Narragansett Bank* v. *The Atlantic Silk Co.*, 3 *Metc.* 282.   *The Buncomb Turnpike Co.* v. *Mc-Carson*, 1 *Dev. & B.* 306.   *Gray* v. *Turnpike Co.*, 4 *Randolph*, 578.   *Smith* v. *Natchez Steamboat Co.*, 1 *How.* (*Miss.*) 479.   *Coffin* v. *Collins*, 5 *Shepley*, 440.   *Water* v. *Gilbert*, 2 *Cushing*, 27.   *Benedict* v. *Lansing*, 5 *Denio*, 283, *per Whittlesey J.*, 284.)

IV. The certificate of election offered in evidence, was not competent evidence for any purpose ; the persons signing are

not certifying officers; it is not required by law, and has no greater force than the statement of any other person, of the same fact. (*The People* v. *Cook*, 14 *Barb*. 288, *and cases cited*. *Oaker* v. *Hills*, 14 *Pick*. 442, 448.)

V. The evidence as to who acted as officers of the company was irrelevant and improper. It was not competent thus to prove that they were such officers. (*Litchfield Iron Co.* v. *Bennett*, 7 *Cowen*, 234. *Clark* v. *Farmers' Woolen Manuf. Co.*, 15 *Wend*. 257, *per Curiam*. 12 *Wheat*. 66.)

VI. The question whether or not the defendant knew the witness was acting as secretary, was leading, and the exception to the ruling is well taken.

VII. The persons' constituting a board of directors must duly assemble as a board, to do a valid corporate act. They cannot separately and individually give their consent in such a manner as to bind them as a collective body. The papers offered in evidence relative to the resignation of Bryant as treasurer, the acceptance thereof, and the appointment of Caldwell in his place, were incompetent. (1 *R. S.* 4*th ed*. 1173, § 6, *mar. p*. 600. *Ang. & Ames on Corp*. § 232. *Livingston* v. *Lynch*, 4 *John. Ch. R.* 596, 597.)

VIII. The report and statement of Tuck, as treasurer, was irrelevant and incompetent, and should have been rejected. There was no evidence that Mr. Tuck was treasurer, or an officer of the company, or how it originated; it was an unauthorized statement, and, at most, a declaration of Mr. Tuck. (*See authorities cited* 16*th point*.)

IX. The "Transfer Book" was not kept pursuant to the statute, and was therefore not competent evidence. (*Laws of* 1848, *p*. 60, § 25.)

X. The president had no authority to empower the treasurer to accept drafts; and his direction so to do, could not bind the company. And the statement that they were authorized by the board of directors could not be evidence of that fact. The letters from the president to the treasurer, offered in evidence, were irrelevant and incompetent, and the exceptions were well

Partridge *v.* Badger.

taken. (*Benedict* v. *Lansing*, 5 *Denio*, 283, 284. *McCullough* v. *Moss, Id.* 576. *See cases cited* 16*th point.*)

XI. If the treasurer had authority to accept drafts, still he had no authority to accept them in blank, as this would require a delegation of authority to fill them up; which authority he could not delegate. (*Chitty on Bills, ed.* 1842, 29, *and cases cited. Herbert* v. *Hine,* 1 *Alab. R., N. S.,* 18. *Davis* v. *Lee,* 26 *Miss.* 4 *Cush.* 505. *Mitchell* v. *Culver,* 7 *Cowen,* 336, 377, *and case cited in note.* 1 *Parsons on Cont.* 71. *Paley on Agency, Dunlap's,* 175, *note a.* 2 *Kent's Com.* 4*th ed.* 663. *Ang. & Ames on Corp.* § 277. *Emerson* v. *Prov. Hat Co.,* 12 *Mass. R.* 237. *Com. Bank, &c.* v. *Norton,* 1 *Hill,* 505, *per Cowen, J. Lyon* v. *Jerome,* 26 *Wend.* 485, *per Verplanck, Sen.*)

XII. The objections to the introduction of the drafts in evidence were well taken. (1.) They were apparently the individual obligations of Mr. Caldwell, and were no evidence against the company, without proof of authority from the company to accept them. No such proof was given. (*See cases cited* 1*st point.*) (2.) No authority could be inferred from previous unauthorized acts. (3.) Four of the drafts had been accepted in blank, and were altered from the condition in which they were when accepted. The authority to make this alteration should have been shown before the drafts could become evidence. (*See* 11*th point and authorities cited.*) (4.) There was no evidence of the drawer's signature.

XIII. To the legal organization of the company and the payment of its capital, it was necessary that it should be in cash. The testimony as to who brought the money, how much, what became of it after it was paid, and the like, was irrelevant, and the exceptions thereto were well taken. (*Crooker* v. *Crane,* 21 *Wend.* 211, 220.)

XIV. Whether the drafts were accepted by the request of the president or with his approbation, was irrelevant, and tended to mislead the jury on the question of authority. (*See cases points* 10 *and* 16.)

XV. It was not competent, under the complaint, to prove

that the drafts were given for a debt due Latham and Gage. There was no such averment in the complaint; the claim there alleged, if any, is between the company and the drawer, Charles Whitney. It was making a different case, and without an amendment the testimony was irrelevant. (*Code,* § 142, *Voorhies' ed.* 146, 147, 148. *Garvey* v. *Fowler,* 4 *Sandf.* 665. *Bristol* v. *Renss. and Sar. R. R. Co.,* 9 *Barb.* 158.)

XVI. The declarations, admissions and acts of the officers or directors, except when shown to be acting by authority, are not evidence against the company, or the defendant as a stockholder. All the evidence as to the interviews and. declarations between Allen, Whitney, Latham and Woodhull, were irrelevant. (*Wyman* v. *Hallowell, &c. Bank,* 14 *Mass.* 58. *Bank of U. S.* v. *Dunn,* 6 *Peters,* 51, 59, 60. *Stewart* v. *Huntington,* 11 *S. & R.* 267. *Coffin* v. *Collins,* 5 *Shepley,* 440. *Tompkins Co.* v. *Thorp,* 13 *Conn.* 173. *Soper* v. *Buffalo and Roch. R. R. Co.,* 19 *Barb.* 310.)

XVII. The fact that these drafts were given for the amount due the contractors, was dependent upon the question as to what amount was so due; and the best evidence of that was the book of the engineer, which contained the accounts; and the evidence offered was incompetent. (*Vinal* v. *Burrill,* 16 *Pick.* 401, 407, 408.)

XVIII. The secondary evidence as to the action of the board on Mr. Tuck's report was incompetent, and the exception on that was well taken. (1.) There was not sufficient evidence of loss of the minute book. It was placed in the hands of Mr. York, by the president and secretary, and he should have been called and examined. (1 *Phil. Ev.* 456, *and cases cited. Rex* v. *Castleton,* 6 *T. R.* 236. *Jackson* v. *Todd,* 3 *John.* 300. *Jackson* v. *Hasbrouck,* 12 *id.* 192, 195. *Jones* v. *Fales,* 5 *Mass. R.* 101. *Eure* v. *Pittman,* 3 *Hawks' N. Car. Rep.* 364. *Parker* v. *Cobbet,* 1 *Car. & P. R.* 282. *Judson* v. *Eslard,* 1 *Alab. R.* 71. *Taunton Bank* v. *Richardson,* 5 *Pick.* 436, 443. *Rex* v. *Denio,* 7 *Barn. & Cress.* 620. *S. C.,* 1 *Man. & Ryl.* 294. *Walker* v. *Beauchamp,* 6 *Car. & P.* 552. *Gresley Eq. Ev.* 2d ed. 270. 1 *Greenl. Ev.* § 558. *Ralph*

v. *Brown*, 3 *Watts & Serg.* 395.) (2.) The notice to produce could not avail the plaintiff. The defendant was not presumptively, or in fact, in possession of the book; it was proved to be in possession of another. (1 *Stark. Ev.* 346, 347. 1 *Greenl. Ev.* § 560. *Smith* v. *Sleap,* 1 *Car. & Kirw.* 48.)

XIX. The motion for a nonsuit should have been granted, on the grounds stated. (1.) There was no evidence of the organization of a company, as alleged in the complaint. The certificate without the signatures did not prove it, or that the defendant was a member of it. (*Laws of* 1848, *p.* 54, §§ 1, 2.) (2.) There was no evidence of authority to accept the drafts, or that they were given for an indebtedness; on the contrary, it was proved that they were in part issued to be discounted.

XX. There was no ratification or affirmance of the drafts by the board of directors, so as to bind this defendant. There can be no ratification without knowledge of the facts, and it does not appear that the board were informed what drafts had been accepted, or the manner, or that they were accepted in blank. The report describes other drafts. (*Paley on Agency, Dunlop*, 171, *note a*, 171, *note q, and cases cited. Nixon* v. *Palmer*, 4 *Selden*, 398. *Owings* v. *Giddings*, 9 *Peters*, 608, 629. *Davidson* v. *Stanley*, 2 *Man. & Gr.* 721.) Some of these drafts were issued for discount, and those were void and incapable of being ratified or confirmed.

XXI. The judge erred in charging the jury that the acceptance with knowledge and assent of the officers, was equal to an original authority; or any acts of the officers could be taken as evidence of such authority. The authority could only come from the board of directors. (*See* 1*st point, subdiv.* 2 ; 10*th point, and cases cited.*)

XXII. The court erred in refusing to charge as requested, and the exceptions thereto are well taken. The points were all pertinent, and it was the right of the defendant to have the jury distinctly instructed on the propositions as matter of law, especially as to the 3d, 5th and 6th propositions. (*Law* v. *Merrills*, 6 *Wend.* 268. *Pennock* v. *Dialogue*, 2 *Peters*, 15, per *Story, J.*)

XXIII. The plaintiff can claim no protection as a *bona fide* holder. There is no proof how he obtained the drafts, and in any event, the fact that they were accepted by an agent, made it the duty of the plaintiff to satisfy himself that the agent had authority. (*Chitty on Bills*, 28. *Nixon* v. *Palmer*, 4 *Selden's Rep.* 398.)

A new trial should be granted, with costs to abide the event.

*By the Court,* T. R. STRONG, J. The allegation in the complaint, that the drafts were accepted by the company by their treasurer, includes an averment of authority to the treasurer to accept the drafts, as the company could not accept by him unless he had such authority. His acts would not be those of the company unless they were authorized by the company; if thus authorized, they were, in legal effect, the acts of the company. What is necessarily understood or implied in a pleading forms part of it, as much as if it was expressed. (*Allen* v. *Patterson*, 3 *Seld.* 478. *Steph. on Pl.* 220, 221. 1 *Chit. Pl.* 640. *Keys* v. *Haseltine*, 2 *Camp.* 604. *Chitty on Bills, Barb. ed.* 585, 586.)

There is nothing in the case showing the drafts to be within any prohibition of the restraining act. It appears from the evidence that the drafts were issued and accepted to pay an indebtedness of the company to contractors with it, for labor performed; for which purpose the company might make notes or drafts or give its acceptances. A corporation, it is well settled, may, without special authority, make a note or draft or accept a draft, for a debt contracted in its legitimate business. (*Moss* v. *Oakley*, 2 *Hill,* 265. *Barker* v. *Mechanic Fire Ins. Co.*, 3 *Wend.* 94. *Mott* v. *Hicks*, 1 *Cowen,* 513. *Kelley* v. *Mayor of Brooklyn*, 4 *Hill,* 263. *McCullough* v. *Moss,* 5 *Denio,* 567. *Halstead* v. *Mayor of New York,* 5 *Barb.* 218. 3 *Comstock,* 430.) The restraining act has no application to such a case.

Regarding the drafts as having been issued and accepted to raise money to pay the contractors, they are equally free from objection arising out of the restraining act, or want of power in

the company. No loan of the drafts by the company, or sale or use of them for circulation as money, by the company, was made or thought of, and a corporation has incidental authority, when not specially restricted, to borrow money for any of its lawful purposes. Some doubt in respect to the authority to borrow has been intimated in the books, but a decision has recently been made by this court, in this district, directly in support of such authority. (*See also Beers* v. *Phœnix Glass Co.,* 14 *Barb.* 358, 362.)

The objection to evidence of the consideration and purpose of the drafts and acceptances, does not specify as a ground of it that they are not alleged; if that ground had been stated, the court might properly have allowed an amendment setting them forth, if necessary. It is now too late to take that ground; but if it were otherwise, the court would now permit an amendment, without terms, as it is clear no prejudice would thereby be done to the defendant.

Besides, I am inclined to think, that proof by the plaintiff of a consideration, and that the acceptances were in the legitimate business of the company, was not necessary in the first instance; that after proof that the acceptances were made by the authority of, and therefore by, the company, the other facts mentioned essential to their validity would be presumed. (*Ang. & Ames on Corp.* 2d ed. 198. *N. Y. Fire Ins. Co.* v. *Sturges,* 2 *Cowen,* 664. *Barker* v. *Mechanic Fire Ins. Co.* 3 *Wend.* 94. *Safford* v. *Wyckoff,* 4 *Hill,* 442.) Authority from the board of directors must be strictly proved, but when proved, it may, I think, be assumed that there was a valid consideration and proper purpose for the acceptances.

The stock subscription paper was relevant and competent evidence upon the question whether the defendant was a stockholder. The execution of it by the defendant was duly proved, and it does not appear, as is assumed by the objection to it, to relate to another organization.

It was competent for the plaintiff to prove by the testimony of witnesses who were present at an election of directors of the company, who were elected. The books of the company, if

they contain a record of the election, which does not appear, although proper, are not the sole evidence to that point; and the fact of who were the directors might also be proved by the testimony of witnesses as to who acted as such. (*Angell & Ames on Corp.* 2d ed. 222, 3.    *Conover* v. *Ins. Co.,* 1 *Comst.* 290.    *Bank of U. S.* v. *Dandridge,* 12 *Wheat.* 83.    *Beers* v. *Phœnix Glass Co.,* 14 *Barb.* 358.    *Hoyt* v. *Thompson,* 1 *Seld.* 320.)    There was ample evidence of this character to prove who were the directors, aside from the inspectors' certificate; and whether that was rightly received or not is wholly immaterial.    This certificate was made by the persons who acted as inspectors, and, as I understand the evidence, at the time of the election, and I do not perceive why it was not competent and proper evidence of what was done on that occasion.

The resolutions accepting the resignation of Bryant as treasurer, and appointing Caldwell to succeed him, not being the acts of the directors as a board, were irregular, but entirely harmless, as it is proved beyond question that Caldwell afterwards acted and was recognized by the company as treasurer; his acts as such, within the scope of his authority, were therefore binding on the company.

It was also clearly proved, that Tuck acted as treasurer subsequent to Caldwell, and was recognized as such by the company, and his report and statement of the financial condition of the company, proved to have been accepted and adopted by the board of directors, was competent and material evidence, as an admission by the company of the facts therein stated.

The authority of the treasurer to accept the drafts, might also be proved by showing that it was the practice of that officer, with the assent of the board of directors, to accept, and that the acceptances in question were recognized and treated as those of the company.    Those acceptances were distinctly and fully recognized by accepting and adopting the report of Tuck without objection.

The president alone could not confer the authority on the treasurer, but I think his directions to that officer were properly received as part of the history of the transaction, to go for

Partridge *v.* Badger.

nothing upon the point of authority, unless proved to have been sanctioned or ratified by the board of directors.

The treasurer might, I think, be authorized by the company to accept the drafts in blank as to the amounts; but whether this is so or not, is not material, as his acceptances were adopted by the action of the company on the report of Tuck, the treasurer, after the blanks had been filled.

I see no good reason why the plaintiff might not prove by the transfer book, that it did not appear thereby that the defendant had transferred his stock; except that such evidence on the part of the plaintiff, that such transfer had not been made, was wholly unnecessary.

The objections made to the introduction of the drafts in evidence, are answered by the remarks already made; except the point that there was no evidence of the signature of the drawer, in respect to which the answer is, that the signature is admitted by the acceptance, and that it was subsequently proved.

The evidence in regard to the payments of the subscriptions for stock was relevant upon the question whether the defendant was a stockholder, and as to the relative amount of the actual capital and the indebtedness of the company.

It was proper to prove the origin, history and objects of the drafts and acceptances, by showing what was done between officers of the company and the contractors, in connection with proof of the ratification of the drafts and acceptances. This evidence does not contravene the rule that the acts and declarations of individual directors or officers are not binding unless authorized by the company, but is in harmony with it.

I think a proper foundation was laid for the introduction of secondary evidence of the contents of the book of minutes of the company. It was proved by the secretary having charge of the papers, that by direction of the president he delivered the book to an attorney, and that afterwards he called at the office of the attorney and with the latter looked in the office for it, and could not find it. The president testified that he called on the attorney for the book, and endeavored to get it, but did not, and that

Partridge *v.* Badger.

he did not know where the book was. Those were the proper persons connected with the company to be examined on the subject, and I think the facts that they did not know where the book was, and that the secretary searched in the office of the attorney where he left the book, and where it was last seen, so far as appears by the evidence, the attorney also making a search for it in connection with the secretary, without success, was reasonable evidence of the loss of the book. It does not appear that the attorney had any interest in the book, or motive for keeping it, or that there is any ground to suspect that the search by him was not in good faith ; and I do not think it was indispensable that he should be called and examined in regard to the loss. (1 *Greenl. Ev.* § 558.   *Cowen & Hill's Notes,* 1228.)

The charge of the judge, and his refusal to charge as requested, were right, with a single exception of no practical importance.   It was technically erroneous to advise the jury, that the officers of the company, if any officers other than the board were intended by the term, could authorize or ratify the acceptances, and to refuse to instruct them that the president could not give authority to accept the drafts.   But the evidence, aside from the directions of the president, of such authority from the board, and of the ratification and adoption of the acceptances by the board, is so full and complete, that the jury could not properly, upon that alone, have found in opposition to it ; and if they had done so, the court would have been compelled to set aside their verdict ; hence no injury has been sustained by the errors referred to.

I am of opinion that the merits of the case are manifestly with the plaintiff; that no error was committed at the trial, of which the defendant can justly complain ; and that a new trial should be denied.

[MONROE GENERAL TERM, September 7, 1857.   *Johnson, T. R. Strong* and *Welles,* Justices.]