HOOSAC MINING & MILLING CO. V. DONAT.

1. The act of an agent outside of the line of his authority is not binding upon the corporation, but corporate liability may ensue from the subsequent ratification of the unauthorized act.
2. Where a complaint in an action for damages avers the making of a certain contract by a corporation, it is competent to show either an original execution with due authority or a subsequent ratification; and an allegation in the answer that there was no ratification amounts merely to a traverse.
3. Ratification of an unauthorized contract is often presumed from the failure of the principal to repudiate within a reasonable time after notice of its existence; provided, the other party, in good faith, expends money and labor under it.

*Error to County Court, Clear Creek County.*

THE complaint in this case, filed by the plaintiff, Donat, alleges that on the 8th of March, 1884, plaintiff and defendant entered into an agreement in writing, by which defendant leased to plaintiff, for the period of one year, part of a certain mining claim therein described; that plaintiff was put in possession thereof by the defendant

company under said lease; that plaintiff complied in every particular with the terms and conditions of the lease, but that on or about July 10, 1884, he was ousted from the premises by defendant and wrongfully and unlawfully excluded therefrom; that at the time of said ouster he had disclosed large bodies of ore, which, under the terms of the lease, he was entitled to mine and extract, retaining eighty per cent. of the proceeds; that by reason of the said wrongful acts of defendant he was damaged in the sum of $2,000.

The answer contains specific denials of all the material allegations in the complaint. But for "special and further answer and defense" the defendant alleges that the pretended lease mentioned in the complaint, executed in its name by one J. J. Elliott, was wholly unauthorized; that said Elliott was never an officer of the company and never its agent, except temporarily to take care of certain of its property; that he never had any authority whatever to make said pretended lease; that the same was executed without the knowledge or consent of the company, and that as soon as its duly authorized officers were advised of the said pretended lease the same was repudiated by it; and that neither the company nor any authorized officer or agent has ever directly or indirectly approved of or ratified the same. To this answer no replication was filed.

The following are all the material facts not sufficiently stated in the opinion: The defendant corporation was in the hands of eastern parties. Boston was its principal place of business. There its books and records were kept, and there its directors held their meetings. It was represented in Colorado by a single officer or agent. The "managing director" first appointed resigned and returned east; afterwards one Calhoon was elected to the office of superintendent and came to Colorado. During the interval between these two administrations, of more than sixty days, Elliott and one Caim were each in turn

the sole agent in charge of the property and business, though neither was ever regularly elected to the office of managing director or superintendent. Soon after Elliott was left in charge he executed the lease to plaintiff. At that time he was in correspondence with the principal officers of the company; letters were exchanged almost daily; he immediately notified the president and secretary of the lease, and received letters from them thereafter; no mention of the lease was made by the company or its officers; and no objection was interposed until Calhoon took charge of the business, some fifty-one days later. Calhoon told plaintiff that he did not think his lease was legal, and requested him to stop work; yet Calhoon himself had no specific instructions from the company controlling his conduct in the premises. He testifies that he requested plaintiff to stop work until he could hear from the company; also that he immediately wrote the company for instructions on the subject. No communication concerning the lease was received from headquarters for something like seventy-two days after Calhoon's letter was mailed. In the meantime Calhoon had given plaintiff written permission to re-enter the mine and continue his work under the lease. While Elliott was in charge, one Curtis, a director of the company, came to Colorado, visited the property, saw plaintiff at work and knew of the lease, but made no objection whatever. Plaintiff did a great deal of dead work, and lost money under the lease; but when ousted he had considerable fine-looking ore in the top and breast of his drift or tunnel; the small profits realized from the sale of ore taken out by him were retained by Calhoon. Calhoon testifies that when he permitted plaintiff to resume work he informed him that no word had been received from the company on the subject; that he acted upon his own responsibility, and that when the company did respond he (plaintiff) might be required to abandon the property. Plaintiff testifies that no such talk was had; that, on the

contrary, he supposed, and was led to suppose, that Cal-
hoon had received a response from the company, and
that his written permission to continue work under the
lease was in accordance with such response.   Calhoon's
letter corroborates plaintiff's statement.   It reads:

"IDAHO SPRINGS, 21st May, 1884.

" *Peter Donat* — SIR:   This is to inform you that the
Hoosac Mining & Milling Company, represented by me,
*have decided* that you are at liberty to continue work
under the lease granted you by J. J. Elliott.

"Yours, etc., JOHN R. CALHOON, Supt."

The cause was tried by the court without a jury, and
judgment rendered in favor of plaintiff for $1,040.60.
To reverse this judgment the present writ of error was
sued out.

Mr. H. W. HOBSON, for plaintiff in error.

Messrs. HANKEY and WHITE, for defendant in error.

HELM, J.   It may be important to note at the outset
that this is not a suit for possession under the lease men-
tioned in the pleadings; it is an action for damages aris-
ing from an alleged violation of the contract.   A careful
examination of the record before us shows clearly that
Elliott, who undertook to execute this lease, acted with-
out sufficient authority in the premises.   We shall assume
that because of this want of authority the lease was orig-
inally not binding upon the company, and proceed to
inquire whether the company's subsequent acts or omis-
sions rendered it liable to plaintiff under the pleadings.
A proper answer to this inquiry involves the considera-
tion of two questions: *First*. Did the pleadings entitle
plaintiff to the benefit of evidence tending to establish
liability through the doctrines either of ratification or
estoppel? and, *second*, if such proofs were admissible
under the pleadings, did plaintiff thereby maintain his
right to relief in the premises?

The answer alleges as new and affirmative matter that when the company learned of the so-called lease it refused to recognize the same, or to be bound thereby, and expressly repudiated the agency and act of Elliott in connection therewith.   Defendant contends that plaintiff's failure to deny these averments of the answer was an admission of their truthfulness, and deprived him of the right to introduce evidence in support of a subsequent ratification by the company.   We do not think this position well taken.   The proposition is elementary that a corporation acts only through its officers and agents.   It is a rule of pleading scarcely less elementary, that the allegation in the complaint that defendant made and executed the written contract referred to sufficiently avers the making of the instrument in behalf of the company by its duly authorized officers or agents.   "The legal effect is the same whether it is said the company made the contract, or that it was made by the president and directors of the company.   They both mean the same thing."  *Insurance Co. v. McDowell*, 50 Ill. 120; *Partridge v. Badger*, 25 Barb. 146.   But the averment that a certain contract was made by the corporation, through its authorized agent or officer, may be sustained by proof of subsequent ratification.   Since the ratification is admitted to have a retroactive effect, it is treated by the decisions as tantamount to original authority.   "The ratification by a principal of an unauthorized act of an agent has a retroactive efficacy; and being equivalent to an original authority, we think that an allegation of due authority is sustained by the proof of such ratification."  *Hoyt v. Thompson's Ex'r*, 19 N. Y. 207.   The court in that case held that evidence of a subsequent ratification by the corporation was properly admitted, although the pleadings referred only to the making of the contract in the first instance.   We conclude that it was competent for plaintiff to sustain the averment in his complaint by proof, showing either an original execution of the lease

with due authority, or a subsequent ratification of Elliott's unauthorized act. This being true, it follows that we must regard the allegations of the answer relating to ratification as stating no new matter calling for denial by replication; in legal effect they amount only to a traverse of matter already set out by the complaint.

This brings us to the second question above stated, viz.: Is plaintiff entitled to recover upon the evidence introduced? Without discussing at length the subjects of ratification by corporations, or their estoppel by conduct, we shall answer this question affirmatively. Conceding that, under the company's by-laws, a lease of part of its realty could only be made or ratified by act of its board of directors; conceding also that such action as a matter of fact was never had in the case at bar,—liability to the plaintiff is not thereby avoided. Ratification of an unauthorized contract is often presumed from the failure of the principal to repudiate within a reasonable time after notice of its existence; provided the other party in good faith proceeded to and did expend money or labor under it. For more than one hundred days after notice (by due course of mail) was given its president and secretary, the company remained silent. In the meantime plaintiff was permitted, by its agents in charge, to expend both labor and money, without return, in developing its property. Nor is this all; during upwards of sixty days of the time mentioned plaintiff acted under the additional authority of Calhoon's letter. Calhoon was the superintendent and duly accredited agent of the company; he was its sole representative in Colorado, and had entire control of its property and business here; he did not undertake to act upon his own responsibility with reference to the lease; on the contrary, he informed plaintiff that he had no sufficient authority; he corresponded with the company, and according to the weight of evidence, including his letter, gave plaintiff to understand that the company by proper proceeding had sanctioned the lease. Under these cir-

cumstances defendant cannot be held free from liability.

But, while holding that plaintiff was entitled to recover, we must hold the sum awarded excessive. He tendered no evidence showing the amount of his expenditures; he did not undertake to prove the exact number of days' work he performed individually under the lease, nor the value of such work. Neither did he offer any other proofs from which a court or jury could determine the extent of his injury in connection with the transaction. No punitive damages were asked, and, under the present rule in this state, none could be given. *Murphy v. Hobbs*, 7 Colo. 541. Nominal damages only should have been allowed plaintiff upon his own evidence. But under the terms of the lease he was to have eighty per cent. of the proceeds from ore extracted by him. The certificates of mill-runs introduced by defendant show that the sum of $68.53 was realized by it in this way. We think the court might have awarded him eighty per cent. of this amount, but can find nothing to justify the recovery of $1,040.60.

We deem it unnecessary to remand the cause for a new trial. The judgment of the court below will be modified, and judgment entered in this court awarding plaintiff $54.83. The costs of the appellate proceedings will be equally divided between the parties.

*Judgment modified.*