Moncrief, J.
It is proved, and there is no evidence tending to create any doubt as to the fact, that S. Gr. Ogden lent and advanced to the International Insurance Company $15,000 on the security of the note in suit, and of other notes. The money was lent, on an application made in behalf of the Company for it, and by its officers. The money lent was received by the Company, and there is no pretense that the .loan has been repaid.
Whatever representations may have been made by Del Banco to the defendants to induce them to subscribe, and however false and fraudulent they may have been, there is not the slightest ■ evidence that-S. Gr. Ogden had any notice or knowledge of them, or'the slightest reason to suppose they had been made.
On the contrary, he was told at the time of the application and loan, that “the Company was doing a good business; had many of the best subscribers, and was in need of money on the subscrip *595 tion notes -to pay losses; he agreed to advance the amount of money.” The negotiation in behalf of the Company was conducted by its President, in the presence of its Vice-President, and the money lent was paid for the Company, to its Secretary.
The evidence offered at folios 46-48, was doubtless offered to show, that the condition of the Company at the time the note was given, was such, that Del Banco’s representations must have been both false and fraudulent. But it could not have tended to show, that S. Gr. Ogden knew or should have suspected that false representations were made to induce the giving of the notes.
Immediately following these offers and exceptions; testimony was given by the defendants, apparently with a view to show such notice to S. Gr. Ogden, as would charge the notes in his hands with the consequences of the fraud. This implies that the Judge, in his discretion as to the order of proofs, called for some evidence on the question of notice, as a condition, to allowing the defendants to show the Company’s operations and condition, for the purpose of establishing the fraudulent character of Del Banco’s representations.
The evidence thus elicited, (and which is in no way impaired by any other evidence given or ’offered,) established, that S. Gr. Ogden was not only a holder for value, but in entire good faith, without the slightest reason to suspect that any representations had been made to the makers of the note to induce them to give it.
There was no offer to show that S. GL Ogden had any reason to suppose there was no resolution of the Board of Trustees authorizing the transfer.
The fact that S.. Gr. Ogden received the note from the officers of the Company, did not charge him with such notice, and the Court did not err in refusing to so charge. All dealings with a company are' done with its officers.
Such a resolution is not, under all circumstances, indispensable to a valid transfer. In Howland v. Myer, (3 Comst., 290,) the plaintiff dealt directly with the officers of the Company, and that case decided the precise point, that the absence of such a resolution would not defeat a recovery.
The Company transacted this kind of business in this manner : This note had been previously transferred to Krollpfeiffer & Borott, under similar circumstances, while Marsh was Presi *596 dent. The Company took it np, and subsequently transferred it to the plaintiff; and neither the defendants nor the Company can. now object that it was negotiated with the indorsement of Marsh as President, instead of that of Starbuck, to give it negotiability. The indorsement was written while Marsh was President.
The note in suit, in respect to creditors of the Company, and in respect to persons taking it from the Company, in good faith, and in the usual course of business, is payable absolutely and in full. (White v. Haight, 16 N. Y. R., 324.) There is no error in the parts of the charge excepted to.
The first request to charge was properly declined. There is nothing tending to show that S. Gr. Ogden suspected the Company was insolvent, or contemplated reaching that condition.
The second request was also properly declined. The fact that a note is a subscription note, does not justify the inference that it was obtained by fraud, or was made on any conditions.
The third and fourth requests need no observations beyond those already made.
There was no evidence justifying such an instruction as the fifth request called for. -
The views already presented show that the Judge should not have charged in conformity-to the sixth request, and that the seventh does not state a tenable proposition.
The evidence contained in the case is meagre, and whatever doubts'may be raised by a casual reading of some of the exceptions, we think it is established, without contradiction or doubt, that S. Gr. Ogden was a holder for value, paid to the Company itself, in good faith, without the slightest reason to suspect that the Company was not in a prosperous condition, or that any misrepresentations had been made to induce the defendants to give the note, or that the officers who transferred it to him were not acting under such by-laws and resolutions as were necessary to formal accuracy, and the creation of full and perfect authority to do the acts which they performed.
An insurance company, whose capital consists almost entirely of notes, having a long time to run, and which is called upon from time to time to pay losses, must, from the necessity of the case, procure some of its notes to be discounted, or obtain temporary loans on their credit. One mode is as unobjectionable as *597 the other m principle, and also in fact, if the money is procured at the same rates.
A resolution of the Company, adjusting a loss and directing its proper officer to pay it, would imply to a business man, without more specific instructions, a direction to obtain a discount or a loan.
In reference to such a transaction, the fact that no resolution was passed authorizing the transfer or discount of any specific notes, should not defeat the title of one who, in good faith, discounts it for, or loans money on its credit to the Company.
And unless we are not only at liberty, but are bound to disregard the decision in Howland v. Myer, (supra,) we must permit such a holder to recover. The Company, having received the $15,000 could not reclaim the note from Ogden without refunding the money.
And, as between the plaintiff and the defendants, the former, on the general principles of commercial law, is entitled to recover.
The judgment should be affirmed.
Bos worth, Ch. J., concurred in this opinion.
Hoffman, J.
The charter of the International Insurance Company, which was produced in evidence, and is referred to by counsel on both sides, dates back to the year 1844, (eh. 156;) was amended in 1847, (ch. 113;) and the name was changed from The Kings County Mutual Insurance Company, to the present title, in 1855 (ch. 295). By the last, act, the designation “ of Brooklyn,” as its locality, was stricken out, and the word “ New York” inserted. In other particulars these amending acts are unimportant.
The Company received by the original act the general powers of a corporation given by the 3d title of the 18th chapter of part 3d of the Revised Statutes; and also authority to make insurances on dwellings, &c., against fire; and marine' insurances upon vessels, &c.
■ Upon receiving applications for insurances to the amount of $100,000, the Company was to be organized. But no policy should be issued until _ the sum of $25,000 had been received, either for premiums or on the certificates which might be issued *598 under the 12th section of the act, or from the avails of notes authorized' to be taken in advance for premiums, in and by the 11th section. (Ch. 156, § 11, Laws of 1844.)
By that 11th section, the Company, for the better security of its dealers, may receive notes for premiums in advance, of persons intending to receive its policies, and may negotiate such notes, for the purpose of paying claims or otherwise, in the course of business. On such portions of the said notes as might exceed the amount of premiums paid by the signers thereof, (at the period of the annual statement afterwards prescribed;) and on new notes taken in advance thereafter, - a compensation might be allowed to the signers not exceeding five per cent per annum, and be paid from time to time.
The system pointed out in the 12th section, of certificates issued for money received, need not be considered in the present case.
The history of the legislation of our State, as to what is termed insuring upon the mutual principle, is given in detail by Denio, Ch. J., in White v. Haight. (16 N. Y. R., 310.) The special charters granted with similar general features, and some particular modifications, down to the act of 1842 incorporating The Atlantic Mutual Insurance Company, are referred to, so far as to show the general regulation of the scheme. That act introduced a new feature, the one contained in the 11th section of the act, as to the present Company, and before stated at length. It was the 12th section in the charter of 1842. The learned Judge says: “The notes given under this 12th section have frequently been before the Courts, and it is perfectly well settled in the courts of original jurisdiction, and in this Court, that they are payable absolutely, and may be collected without any allegation of losses, and without an assessment.”
• 1. The first, and a very important question "is, whether the note was legally transferred and negotiated to Ogden within the provision mentioned.
In Howland v. Myer, (3 Comst., 290,) it was held that the statute did not restrict the Company to a negotiation for the purposes of payment merely. A Company might discount the note, and so apply its avails .in discharge of losses. It might transfer a note to the claimant of a loss. In a word, any bona fide settle *599 ment of a presumed loss, contingent or absolute, made with the dealers of the Company in the usual course of business, was authorized.-
In The Central Bank of Brooklyn v. Lang, (1 Bosw., 202,) the proof was of a delivery of the note sued upon, with several other notes, to the plaintiffs, who discounted them, and the proceeds were paid to the Insurance Company which had received them, to be applied to their general business purposes.
The proof here is of an actual loan by Ogden of' $15,000, to the Company, on a transfer of this and other notes; that he was informed the notes were subscription notes, and that a discount- was wanted to enable the Company to meet its losses. I think the proof warrants us in holding that Ogden took the notes ignorant of any intended misappropriation, and was authorized to consider'that the transfer was for a legitimate purpose.
The next point of importance relates to the authority of the President, Marsh, to indorse the note, so as to transfer the title of the Company to the plaintiff through S. Gr. Ogden, the elder.
The complaint alleges .an indorsement by the Company. The answer puts this allegation distinctly in issue. The testimony is, that the notes of the Company -were indorsed by the President. All the notes given to Ogden were indorsed by him. The note in question had been previously indorsed by Marsh, and lodged with Krollpfeiffer and Borott for money received by them, and had been taken up by the Company before the transfer to Ogden.
In The Central Bank of Brooklyn v. Lang, (ut supra,) the complaint averred the making.of a note in favor of the Company, its indorsement- by the Company, and an offer of it, with other notes to the plaintiffs, who discounted them in the regular course of business. These allegations, by not being denied, were admitted by the answer. The note was indorsed by the Vice-President.
In The Marine Bank v. Clements, (3 Bosw., 600,) the note was precisely in the form of the note in the present case, except being payable at the.Bank of Commerce. It was to the same Company, and was indorsed by Marsh, the President. The allegation in the complaint of an indorsement by the Company was expressly put in issue by the answer, and it was therein averred, that the *600 note was indorsed, without a resolution of the Board, by the President, when the Company was insolvent, and to give a preference to the transferree, a creditor.
Ho resolution of the Board was proven, no by-law conferring authority on the President, no evidence that any notes belonging to the Company had ever been negotiated - and indorsed by the President, or that this had ever been done with the knowledge of the Directors, was produced. '
It was held, that the title of the Company had not been divested. It could only be by a transfer by some person authorized to indorse it in the name óf the Company, or who had been held out by the Company as .so authorized. This could be evidenced by his acts, and the usual practice of the Company. His office of President by itself showed no such power.
In Howland v. Myer, (ut supra,) both usage of the Company and its by-law in the case, were held sufficient to show authority in the President to indorse the note.
See also Partridge v. Badger. (25 Barb., 146.) I think that the evidence in the present does sufficiently )prove a usage, for -the President to indorse and negotiate the notes, sanctioned by the Company. •
There was no evidence in the case, and none offered to show that Ogden had’ reason to suppose there was no resolution of the Board for the transfer. The fact of his dealing with the officers is not enough to charge him with such notice, and the Court did not err in refusing so to charge.
3. Ho objection founded upon the original, irregular or unlawful or fraudulent organization of the Company, can' now avail the defendants. They recognized it, subscribed to its stock, dealt with it, gave the present note to it by its name, and that note has gone into the hands of a holder for value without notice proven to have been possessed by him of any such matters. (Palmer v. Lawrence, 3 Sandf. S. C. R., 161.)
4. The learned counsel of the defendants insists, that the transfer of the note was void under the 8th section of the act “ to prevent the insolvency of moneyed corporations,” because it was a transfer of effects exceeding in value $1,000, and was not authorized by a previous resolution of the Board of Directors, (1 R. S., 591, § 8,) and that the plaintiff is not within the exception con *601 tained in such section, not being a purchaser for a valuable consideration without notice.
Justice Comstock, in Curtis v. Leavitt, (15 N. Y. R., at p. 46,) says, that some of his brethren were of opinion that the holders of the securities in that case were purchasers within the act. They were pledgees of the bonds secured by a transfer of corporate assets. He says that he does not dissent from those views. Justice Brown deems it needless to pass upon it, but plainly leans in its favor. .Justice Shankland supports it, (p. 138,) and Justice Paige is extremely dear and decided upon the point (p. 192). In Howland v. Myer the plaintiff took the title from the President on account of his claim for a loss.
In Palmer v. Yates, (3 Sandf. S. C. R., 137,) it was held, that any person who, for what the law holds a valuable consideration, has acquired a title, whether legal or equitable, by an assignment or transfer from a moneyed corporation, is to be -deemed a purchaser within the meaning of the act, and this whether the assignment is made absolutely or as a collateral security.
It appears to me to be a well warranted proposition, that a party who advances money for the use of a corporation of this description and receives from it as collateral security notes taken and held as this note was, is a purchaser for valuable’ consideration within the exception in the 8th section, and is protected, unless it is affirmatively proven that he had notice of a want of a previous resolution. (See also Leavitt v. Blatchford, 17 N. Y. R., 521.)
As to that notice, Mr. Justice Paige considers that it should be as clear .and certain as that which is necessary to break in upon the registry acts. (Curtis v. Leavitt, 15 N. Y. R., 192.)
In Palmer v. Curtis, (ut supra,) it was held that there was no implication of knowledge, or duty to inquire, in an ordinary purchaser, although there might be in a director or officer. The omission to inquire was not sufficient. There must be, as a general rule, actual notice of the want of a resolution.
There is no evidence in this case sufficient to establish that Ogden had any notice of the want of a resolution.
It is not necessary to consider the important suggestion of Justice Gardiner, in Howland v. Myer, that if the 8th section is in conflict with the provisions of the charter, it must yield.
*602 5. The next point is that the transfer was within the 9th section of the statute avoiding such transfer, when made in contemplation of. insolvency, giving a preference to creditors. (1 R. S., 591, § 9_
_ By section 61st of article 3d, (1 R. S. 598,) this Company was a moneyed corporation within the statute. By section 17th of its charter, sections 19 to 25, inclusive, were declared inapplicable to it. .
But Mr. Ogden, the party from whom the plaintiff got his title, did not occupy the position of a preexisting creditor. He created a debt from the Company to himself directly, by advancing' his money on the faith and pledge of these notes. (Leavitt v. Curtis, ut supra.)
6. Another point raised is as to the effect of the representations of Del Banco which induced the defendants to subscribe, and which it is alleged were false and fraudulent.
The Judge charged that if Ogden received the note for money advanced at the time, and without notice, then, although the representations were fraudulent and false and influenced the defendants, the plaintiff could recover.
The Jury had no evidence before them on which to found a verdict of Ogden’s knowledge of the fraudulent statements having been made. Whether then, they concluded that the defendants had been misled or not they were equally warranted in finding their verdict, Ogden being found ignorant of the false statements, and the charge of the Judge on this point we think was right.
Questions were asked by the defendants’ counsel tending to show an abstraction of a large amount of assets of the Company by its officers for their own use (folios 46, 48).. The effect of such proof would be to support the allegation of the false statements of Del' Banco, or to show the actual insolvency or rottenness of the Company. B.ut if Ogden did not know of the statements, and did not know of the insolvency, he could not. be affected. As to the latter, the Company was represented to him to be in a good condition, and nothing forces knowledge of' its actual state upon him.
The judgment must be affirmed.
Judgment affirmed.