J. M. EDWARDS *v.* L. D. LEAVITT.

*Evidence. Self Defence. Exemplary Damages. Practice.*

Under the circumstances of this case, it was *held* not error for the county court to admit evidence of the pendency of certain suits in favor of the defendant against the plaintiff, growing out of the same controversy which led to the assault, for the purpose of showing the *animus* of the defendant towards the plaintiff.

The amount and extent of force that one has a right to use in self defence, depends, in some measure, on the perilous condition he has reason to suppose himself in from apprehended violence from his assailant, and what force he has reason to suppose neces-

sary to protect himself. Hence, in an affray between the plaintiff and the defendant, where it was known to both that two hired men of the defendant were near by, it was held proper for the jury to consider that fact, as bearing on the question of how much force the defendant had a right to use, under the circumstances, in self defence.

It has long been settled in this state, that in actions of trespass for assault and battery, the jury may give exemplary damages. And the pendency of a criminal prosecution for the same act, is no bar to the recovery of such damages.

It is the practice in the supreme court, to require counsel for the excepting party to make all the points in the opening on which they rely, that the opposing counsel may have opportunity to reply. New points made in the close, will not be considered by the court.

TRESPASS for assault and battery. Pleas, the general issue, *son assault demesne,* and defence of the possession of a certain barn in Walden. Issue was joined on said pleas, and trial by jury, June term, 1873, Ross, J.; presiding.

It appeared that for about two years prior to July 27, 1870, the plaintiff and defendant were each living on a farm in Walden,—the plaintiff occupying the upper, and the defendant the lower part of the house; that there had been a dispute between the parties as to each other's right to occupy said farm, and that in the spring of 1870, each commenced to till some part of the soil, but the plaintiff made no attempt to carry on the farm after sowing a small piece of oats in the spring, and the defendant assumed the whole control of the land thereafter. It further appeared that the plaintiff occupied a portion of the stable in the barn in question, under the scaffold, during the winter of 1869–70, by keeping his horse and cow there, and the scaffold overhead, by storing his hay which he fed to his horse and cow, and continued such occupancy till July 27, 1870, at which time, a few forkfuls of the plaintiff's hay were remaining on said scaffold. The defendant occupied the balance of said barn during all said time.

The plaintiff's evidence tended to show, that on the said 27th day of July, he drove up to said barn with two loads of hay, not cut on said farm, which he intended to put on to said scaffold, and that, on reaching the barn, he found the defendant unloading hay cut on said farm; that the defendant threw a little of his load on to said scaffold, whereupon the plaintiff remonstrated, and told him to put no hay on the scaffold, and the defendant not heeding his remonstrances, the plaintiff went upon the scaffold,

and threw down to the floor the hay which the defendant pitched on there, and that the defendant backed his team out of the barn, and sent his hired men, Gile and Knight, to the hay-field for another load; that the plaintiff then attempted to drive in with his hay, and the defendant opposed him, telling him he had no right there, and not to drive in, the plaintiff claiming that he had a right to drive in, and that the defendant had no right to the barn, but the plaintiff did not attempt to interfere with the defendant's using the barn, excepting as to the scaffold and the rest of the barn which the plaintiff had been using; that the defendant stood in front of the horses and prevented their going in, and that the defendant's wife, a sister of the plaintiff, came to the barn and assisted the defendant in opposing the plaintiff's entry to the barn; that the plaintiff tried to drive his horses in, but the defendant and his wife would frighten them so he could not, and that finally, after parleying an hour or more, Gile and Knight returned with a load of hay; that while parleying there, the plaintiff pitched a portion of his load upon the ground, in front of his horses, and then threw it upon the scaffold, and was so at work when Gile and Knight returned; that the plaintiff, while standing in front of his horses on the barn floor, was struck by the defendant a blow with a forkstale, on his right arm, fracturing one bone, and another blow on his head, making a wound two and one half inches long, cutting to the bone. The plaintiff's evidence further tended to show that he did not strike the defendant at all.

The defendant's evidence tended to show, that while the parties were parleying as above stated, the defendant attempted to close the doors of the barn, and that the plaintiff thereupon struck him twice, hitting him on the shoulder; that the defendant then went round the load of hay, into the barn, and the plaintiff immediately struck him on the head with his forkhandle, and had his fork upraised to strike a second blow, when the defendant struck the plaintiff, to prevent him from further striking him, and that the plaintiff thereupon came at him with the tines of his fork toward the defendant, and the defendant dropped his own fork and grasped the plaintiff's fork just above the tines, and the plaintiff

pushed the defendant backward, until his feet tripped, and he fell, each having hold of the plaintiff's forkhandle; and while down, the plaintiff struck him with his fist several blows, and the defendant's wife crying "murder," said Gile and Knight seized the plaintiff, and took him off. The plaintiff offered testimony to prove that before this time, the defendant had commenced several suits against him, including one in ejectment for said farm, and others in trespass *qua. clau.* for trespasses committed thereon, and that they were then pending. The defendant objected to this evidence, but the court admitted it, to show that the defendant was entertaining unfriendly feelings toward the plaintiff; to which the defendant excepted. The plaintiff testified that he was physically stronger than the defendant, and that an ill feeling had existed between them for some time  The defendant's evidence tended to show that the plaintiff, before striking him, threatened to "smash him," and used other threatening language.

It appeared from evidence unobjected to, that the plaintiff claimed the defendant's interest in the farm was that of mortgagee, and that he had tendered him the amount due, and had brought a bill to redeem the premises, which was then pending, but had since resulted in favor of the plaintiff. It further appeared that Knight and Gile were in the road near the barn when the affray, or assault, commenced, and this was known to both parties to the assault. The defendant requested the court to charge the jury as follows:

1.  " If the jury find that the plaintiff committed the first assault, then, if the defendant used only such force as was necessary to defend himself, he is not liable; and in determining the question of how much force the defendant should use, the jury are to look at the circumstances of the affray as they appeared to the defendant at the time, taking into consideration the ill feeling between the parties, the superior strength of the plaintiff, the plaintiff's threats to do the defendant bodily injury, the weapon the plaintiff had, and the manner and extent of the plaintiff's assault upon the defendant.

2.  " Under the pleadings, if the jury find that the plaintiff committed the first assault, the plaintiff cannot recover, unless he

18

proves an excess of force used by the defendant in his defence, and then only for the excess.

3. "If the defendant was in the actual possession of the barn, whether rightfully or not, the plaintiff had no right to make a forcible entry into the barn, and if he attempted such forcible entry, the defendant had the right to resist such entry, and to use such force as was necessary to prevent it; and in determining the amount of force necessary to be used, the jury are to consider the relative strength of the parties, the disposition of the plaintiff, whether quarrelsome or otherwise, his threats and avowed purpose of entering the barn, and his apparent ability to accomplish such purpose."

The court substantially complied with the defendant's second request; and also with the first request, except that, after having told the jury that if the plaintiff committed the first assault upon the defendant, the defendant was not bound to wait till the blow reached and disabled him, before he defended himself and disabled the plaintiff, the court told the jury they might consider the nearness of help, in addition to the circumstances named in the request, in determining the extent and amount of force the defendant would have a right to use before he would be guilty of using an excess of force. After the jury had retired, the defendant claimed an exception, because he claimed that in one instance, the court told the jury to inquire and find " who was the first aggressor," instead of " who committed the first assault." The court had no recollection of using the language claimed, but had a distinct recollection of telling the jury several times during the charge, to first determine who committed the first assault, having first defined what legally constituted an assault, in a manner not excepted to. The court was of the opinion that if in one instance it did use the language claimed, the jury could not be misled thereby, under the instructions that had been given, and so informed the defendant's counsel, and did not call back the jury to recall the language, if used.

The court also complied with the defendant's third request, if the jury found the defendant had exclusive possession of the barn at the time; but further charged, that if the jury found that the parties had a joint possession of the barn, the plaintiff

had a right to use force to keep possession of that part which he had had, and was then in possession of, and for that purpose would have the right to use force to drive into the barn and unload his hay, at such reasonable times as would not interfere with the defendant's reasonable use of that part of the barn of which he had possession; that both parties could not drive into the floor at the same time, to put hay upon the portions of the barn of which they respectively had possession, but that at such times as the defendant did not desire to use the floor for that, or any other purpose, if the plaintiff had, and was then in possession and use of the scaffold and stable, as he claimed, he would have the right to drive in to the floor, and use force for that purpose, to put his hay upon the scaffold, and thus keep possession of the scaffold and stable.

It appeared that at the time of the trial, a state prosecution was pending against the defendant for the same assault and battery sued for in this action. The court charged the jury that they might allow the plaintiff exemplary damages, if they thought the circumstances of the case warranted it, explaining to them the nature and purpose of such damages, fully, and in a manner not excepted to by the defendant. The court charged fully and to the acceptance of the defendant in other respects. To the refusal to charge as requested, and to so much of the charge as is above detailed, the defendant excepted.

*O. S. & C. C. Burke*, for the defendant.

The first question is in reference to the admission of the testimony that the defendant had commenced certain suits against the plaintiff. We contend that such evidence was not proper, and should have been excluded. Such evidence would have a tendency to prejudice the jury against the defendant, and the fact that there were suits pending between the parties, would not necessarily prove whether the parties were or were not on friendly terms.

In that part of the charge wherein the jury were told that they might consider the nearness of help, we insist, there was error.

*Paige* v. *Smith*, 13 Vt. 251 ; *Harrison* v. *Harrison*, 43 Vt. 417 ; 1 Hilliard Torts, 201.

We insist that no exemplary damages could be allowed, so long as a *criminal* prosecution was then pending against defendant. A man ought not to be punished more than once for the same offence. U. S. Constitution, Art. 5 ; Sedgw. Dam. appendix, 653, *et seq.* ; *Fay* v. *Parker*, recently decided in N. H. by FOSTER, J.

*J. P. Lamson*, for the plaintiff.

The plaintiff had a right to show the state of feeling between himself and the defendant at the time of the assault, and for this purpose, solely, offered to show that the defendant had commenced several suits against him, relating to the title of these premises.

The defendant's requests to charge, were substantially complied with, and in some particulars the charge was more favorable to the defendant than requested. There is no error in the rest of the charge.

Each of the parties, up to this time, had occupied distinct portions of the house and barn, and, by the acquiescence of both parties, their respective rights were then before the courts. Each was then legally bound not to interfere with the other. The plaintiff had always had possession of this scaffold—the defendant never had.

On the day of the assault, the plaintiff did not interfere with the defendant, or his part of the barn ; he stood in the attitude of defending his own premises, and not of invading the defendant's premises. There was no error in not calling back the jury ; they could not have been misled.

This is a case where the plaintiff is entitled to exemplary damages. The court only charged that the jury might allow exemplary damages, if they thought the circumstances of the case warranted such damages, after fully explaining this kind of damages to them. This principle has always been recognized, and is now too old and well established to be overturned. *Nye* v. *Merriam*, 35 Vt. 438 ; *Devine* v. *Rand*, 38 Vt. 621 ; *Ellsworth* v. *Potter et al.* 41 Vt. 685. The court cannot know that the state cause will ever be tried.

*Powers & Gleed*, in reply.

The evidence as to the pendency of suits between the parties at the time of the affray, was inadmissible. Such proof was not pertinent to the issue, and might prejudice the jury.

The defendant's first request should have been granted without qualification. The right of *self defence* is purely personal, and does not depend on the " nearness of help."

The defendant, when attacked, must see with his own eyes, and act upon his own judgment, in repelling the attack. His defence is to be made from his own stand-point—how the attack *appears* to him—not how it appears to others. *Harrison* v. *Harrison*, 43 Vt. 417.

It was error for the court to tell the jury to find who was the " first aggressor," and equally erroneous for the court not to say whether they told the jury so or not. Such an instruction might mislead a jury. They might think the bringing of the suits was an aggression.

The defendant's third request should have been adopted without the addition of a neutralizer. There was no evidence of a joint possession at the time of the affray.

The plaintiff was not entitled to recover exemplary damages. The right to exemplary damages in any civil action, seems to have but little authority to support it. Mr. Sedgwick, in his work on damages, contends stoutly for the doctrine; but the cases cited by him, fail to show any reason for such a rule, and many of them are entirely silent upon the question. *Huckle* v. *Money*, 2 Wils. 205; *Sears* v. *Lyons*, 2 Stark.; *Williams* v. *Currie*, 1 C. B. 841; *Doe* v. *Filliter*, 13 M. & W. 47; *Rogers* v. *Spence*, Ib. 570. See also to the contrary, 2 Greenl. Ev. 228, and notes, where the doctrine is effectually exploded; 3 Parsons Cont. 169, where the reasoning of Mr. Greenleaf is virtually adopted. The tendency of the modern decisions is toward the overthrow of this doctrine. *Hunt* v. *Bennett*, 19 N. Y. 174; *Malone* v. *Murphy*, 2 Kan. 250; *Selden* v. *Cashman*, 20 Cal. 56; Sedgw. Dam. 535, in notes.

The case shows that a criminal prosecution was pending against the defendant at the time of trial. We insist that under such circumstances, punitory damages are not recoverable. *Austin* v. *Wil-*

*son*, 4 Cush. 273. In the recent case of *Fay* v. *Parker*, in New Hampshire, decided in March, 1873, FOSTER, J., reviews the whole doctrine of exemplary damages, and agrees with *Austin* v. *Wilson*.

The opinion of the court was delivered by

PECK, J. In view of the nature of the action and the various issues involved in the trial of the case before the jury, and the very general scope of the evidence in the case without objection, we cannot say that it was error to admit the evidence of the commencement and pendency of the suits in favor of this defendant against this plaintiff, growing out of the controversy as to the possession of the premises. This evidence appears to be of much the same character and tendency as other evidence in the case introduced without objection.

In relation to the charge of the court on the subject of the right of self defence, after having charged the jury agreeably to the defendant's requests on that subject, telling them, according to such requests, what circumstances they were to take into consideration in determining the amount of force defendant had a right to use, and adding that, if plaintiff committed the first assault upon the defendant, the defendant was not bound to wait till the blow reached and disabled him, before he defended himself, and disabled the plaintiff, it was not error to tell the jury that they might consider the nearness of help, in addition to the circumstances named, in determining the extent and amount of force the defendant would have a right to use before he would be guilty of using an excess of force. The amount and extent of force which the defendant would have a right to use, would depend in some measure on the perilous condition he had reason to suppose he was in from apprehended violence from the plaintiff, and what force he had reason to suppose necessary to protect himself. The fact of the presence or proximity of the defendant's two hired men, *known to both parties*, was proper for the jury to consider as bearing on the question. The defendant, so situated, would naturally be less apprehensive of grievous bodily injury, than if in some secluded place, beyond the reach of assistance.

It is insisted that exemplary damages cannot be recovered in,

a civil action ; and if in any civil action, not in this case, for the reason that at the time of trial, there was a criminal prosecution pending against the defendant for the same assault, and that he ought not to be punished twice for the same transaction. It has long been settled in this state, and correctly settled upon sound reasons, that in actions of this character the jury may give exemplary damages. It is not an innovation of the common law, it *is* the common law. It is no answer to the application of the principle in this case, that a criminal prosecution is pending for the same assault. It is said the defendant should not be punished twice. But he has not been punished once yet, and may never be, beyond actual damages, if exemplary damages cannot be recovered in this action, as the criminal case may never be tried. But even if it had been tried, a conviction, sentence, and judgment, in the state prosecution, would be no bar to a recovery of exemplary damages in this action.

These are all the questions raised, or points made, by the counsel who opened the argument in behalf of the excepting party, either in his brief or in argument. Some new points were started by the counsel who closed the argument on the same side, but we have not considered them, as it is the practice of the court to require counsel to make the points in the opening, on which they rely, so that the opposing counsel can have an opportunity to reply.

Judgment of the county court affirmed.