## MURPHY V. HOBBS.

1. In civil actions for injury resulting from torts, where the offense is punishable under the criminal laws, exemplary damages, as a punishment or example, cannot be awarded. *Quære*, whether the recovery in all cases should not be limited to a liberal rule of compensatory damages?

2. In actions for malicious prosecution, malice may be implied or imputed from the absence of probable cause.

3. But affirmative evidence of language or acts on the part of the prosecutor, tending to show actual malice, are admissible in evidence when they are so closely connected with the transaction as to be part of the *res gestæ*.

*Appeal from District Court of Weld County.*

THE facts are stated in the opinion.

Mr. WM. B. MILLS, for appellant.

Messrs. HAYNES, DUNNING and HAYNES, and Messrs. RHODES, LOVE and McCREERY, for appellee.

HELM, J. This is a civil action, brought to recover damages for malicious prosecution and false imprisonment. Plaintiff procured a verdict, and judgment was duly entered thereon. Defendant prosecutes this appeal and assigns in support thereof numerous errors. The most important of these assignments is one which relates to the measure of damages adopted in the court below.

Upon this subject the following instruction was there given: "That the measure of damages in an action for malicious prosecution is not confined alone to actual pecuniary loss sustained by reason thereof; but if it is believed, from the evidence, that the arrest and imprisonment stated in the complaint were without probable cause, then the jury may award damages to plaintiff to indemnify him for the peril occasioned to him in regard to personal liberty, for injury to his person, liberty, feelings and reputation, and *as a punishment to defendant* in such further sum as they shall deem just."

By the assignment of error and argument challenging the correctness of this instruction, we are called upon to consider the following question, viz.: Can damages, *as a punishment*, be recovered in cases like this?

The rule allowing, under certain circumstances, in civil actions based upon torts, exemplary, punitive or vindictive damages, for the purpose of *punishing* the defendant, has taken deep root in the law. It has the sanction of learned courts and law writers, among the latter Mr. Sedgwick; and its abrogation should be favored only upon the most weighty considerations. But we find denying its correctness, Professor Greenleaf and several courts of the highest respectability.

As we shall presently see, the question is not conclusively *res judicata* in Colorado. We therefore feel at liberty to inquire into the reasons urged against the doctrine.

Were this subject now presented to the various courts of the country for the first time, we have little doubt as to what the verdict would be; the propriety of adhering exclusively to the rule of compensation appears, upon careful investigation, with striking clearness. But many of the courts, like that of Wisconsin, while expressing strong disapprobation of the doctrine "inherited," and declaring it "a sin against sound judicial principle," feel constrained to preserve it, on account of precedent

in their respective states, and the "current of authority elsewhere." *Brown v. Swineford*, 44 Wis. 282.

Perhaps the most impressive objection to allowing damages as a punishment in cases like the one at bar, is that which relates to dual prosecutions for a single tort. Our state constitution declares that no one shall be twice put in jeopardy for the same offense. A second criminal prosecution for the same act after acquittal, or conviction and punishment therefor, is something which no English or American lawyer would defend for a moment. But here is an instance where practically this wrong is inflicted. The fine awarded as a punishment in the civil action does not prevent indictment and prosecution in a criminal court. On the other hand, it has been held that evidence of punishment in a criminal suit is not admissible even in mitigation of exemplary damages in a civil action. *Cook v. Ellis*, 6 Hill, 466; *Edwards v. Leavitt*, 46 Vt. 126.

Courts attempt to explain away the apparent conflict with the constitutional inhibition above mentioned; they say that the language there used refers exclusively to criminal procedure and cannot include civil actions. *Brown v. Swineford, supra.* But this position amounts to a complete surrender of the evident spirit and intent of that instrument. When the convention framed, and when the people adopted, the constitution, both understood the purpose of this clause to be the prevention of double prosecutions for the same offense. Yet, under the rule allowing exemplary damages, not only may two prosecutions, but also two convictions and punishments, be had. What difference does it make to the accused, so far as this question is concerned, that one prosecution takes the form of a civil action, in which he is called defendant? He is practically harassed with two prosecutions and subjected to two convictions; while no hypothesis, however ingenious, can cloud in his mind the palpable fact that for the same tort he suffers two punishments.

An effort has been made to mitigate the undeniable hardship and injustice by declaring that juries in the second prosecution, whether it be civil or criminal in form, may consider the punishment already inflicted. But both reason and authority conclusively show that this proposition is illusory; that the application of such a rule is impracticable; and that the attempt to apply it, while producing confusion, would not effectively accomplish the purpose intended.

A second weighty objection to the rule under discussion relates to procedure. It is doubtful if another instance can be found within the whole range of English or American jurisprudence, where the distinctions between civil and criminal procedure are so completely ignored. Plaintiff sues for damages arising from the injury done to *himself*. His complaint or declaration is framed with a view to compensation for a purely private wrong; it need not be under oath, and does not inform defendant that he is to be tried for a public offense. The summons makes no mention of punishment; it simply commands defendant to appear and answer in damages for the private injury inflicted upon plaintiff. When the cause is called for trial, no issue upon a public criminal charge is fairly presented by the pleadings.

A trial and conviction are had, and punishment by fine is inflicted, without indictment or sworn information.

The rules of evidence peculiarly applicable in criminal prosecutions are rejected.

The doctrine of reasonable doubt is replaced by the rule controlling in civil actions, and a mere preponderance in the weight of testimony warrants conviction; defendant is compelled to testify against himself, and such forced testimony may produce the verdict under which he is punished; depositions may be read against him, and thus the right of meeting adverse witnesses face to face, be denied.

The law fixes a maximum punishment for criminal

offenses, and in this state the presiding judge determines the extent thereof, where a discretion is given; but under the rule we are considering, the jury are entirely free from control, except through the court's power — always unwillingly exercised — to set aside the verdict; they may, for an offense which is punishable under criminal statutes by $100 fine at most, award as a punishment many times that sum.

And finally, when the defendant has been punished in the civil action, he is denied the privilege of pleading such expiation in bar of a criminal prosecution for the same offense. He can hope for no executive clemency in the civil suit; and if imprisoned upon the second conviction, under the authorities, *habeas corpus* does not lie to aid him.

The incongruities of this proceeding are not confined to the criminal branch of the law. Civil actions are instituted for the purpose of redressing private wrongs; it is the aim of civil jurisprudence to mete out as nearly exact justice as possible, between contending litigants; there ought to be no disposition to take from the defendant or give to the plaintiff more than equity and justice require.

Yet under this rule of damages these principles are forgotten, and judicial machinery is used for the avowed purpose of giving plaintiff that to which he has no shadow of right. He recovers full compensation for the injury to his person or property; for all direct and proximate losses occasioned by the tort; for the physical pain, if any, inflicted; for his mental agony, lacerated feelings, wounded sensibilities; and then in addition to the foregoing, he is allowed damages, which are awarded as a punishment of defendant and example to others. Who will undertake to give a valid reason why plaintiff, after being fully paid for all the injury inflicted upon his property, body, reputation and feelings, should still be compensated, above and beyond, for a wrong committed

against the public at large? The idea is inconsistent with sound legal principles, and should never have found a lodgment in the law.

The reflecting lawyer is naturally curious to account for this "heresy" or "deformity," as it has been termed. Able and searching investigations, made by both jurist and writer, disclose the following facts concerning it, viz.: That it was entirely unknown to the civil law; that it never obtained a foothold in Scotland; that it finds no real sanction in the writings of Blackstone, Hammond, Comyns or Rutherforth; that it was not recognized in the earlier English cases; that the supreme courts of New Hampshire, Massachusetts, Indiana, Iowa, Nebraska, Michigan and Georgia, have rejected it in whole or in part; that of late other states have falteringly retained it because "committed" so to do; that a few years ago it was correctly said, "At last accounts the court of queen's bench was still sitting hopelessly involved in the meshes of what Mr Justice Quain declared to be 'utterly inconsistent propositions.'" And that the rule is comparatively modern, resulting, in all probability, from a misconception of impassioned language and inaccurate expressions used by judges in some of the earlier English cases.

See Professor Greenleaf's response to Mr. Sedgwick's criticism of the former's views on this subject, 2 Greenl. Ev. p. 235 *et seq.;* also the opinion of the court, delivered by Mr. Justice Foster, in *Fay v. Parker,* 53 N. H. 342; and other authorities cited at the end of this discussion.

Mr. Parsons, while with evident reluctance sanctioning the rule, makes the following declaration: "We cannot believe that it was ever a principle of the ancient and genuine common law that damages should be punishment, or that the civil remedy for the wrong done should be punitive to the wrong-doer as well as compensative to the sufferer." 3 Parsons on Contracts (6th ed.), 171.

The words "smart money," and also the following

adjectives, have been used to designate this class of damages: *speculative, imaginary, presumptive, exemplary, vindictive,* and *punitive* or *punitory.* The literal meaning of all but the last three is easily reconcilable with the idea of compensation; they were so used in the first place; and even as to the excepted ones, there are many cases wherein it is evident they were employed without any intentional reference to punishment. These words all came into use through the beneficent design of courts to distinguish between private wrongs with, and those without, an evil intent, and to extend the right of recovery, in the former case, to injuries excluded from computation in the latter.

Mr. Justice Foster concludes a discussion of the expression *smart money,* as used by Grotius and jurists contemporary with that author, in the following language: "It is interesting, as well as instructive, to observe that one hundred and twenty years ago the term *smart money* was employed in a manner entirely different from the modern signification which it has obtained, being then used as indicating compensation for the smarts of the injured person, and not as now, money required by way of punishment, and to make the wrong-doer smart." *Fay v. Parker, supra.*

So long as the jury are considering the material pecuniary injury, direct or approximate, shown by the evidence, and the physical pain, their inquiry relates to what are *termed* actual damages; but when authorized by a vicious intent of the wrong-doer, they turn to the realm of mental anguish, public indignity, wounded sensibility, etc., the damages awarded may more appropriately be described as *presumptive, speculative,* or *imaginary.* The injury in the latter case is no less actual or real than in the former, but it is less tangible; compensation therefor is more a matter of judgment, less a result of computation.

A misapprehension seems sometimes to exist as to the

word *compensatory*, when used in this connection. Under the rule limiting them to compensatory damages, juries will, with proper instructions, recognize a broad distinction between a tort unaccompanied by malice, or circumstances of aggravation or disgrace, and one producing equal direct pecuniary damage where either of these conditions exist. In the former case they consider only the actual injury to the person or property, including expenses, loss of time, bodily suffering, etc., occasioned by the wrongful act; in the latter, they allow such additional sum as in their judgment is warranted by the circumstances of contumely, anguish or oppression; but in both instances the damages are awarded as *compensation;* the additional sum is given to the individual as a recompense for the mental suffering, or wounded sensibilities, etc., as the case may be. It often happens that this constitutes the principal element of the recovery.

If, upon a crowded thoroughfare, one maliciously assaults me with blows and epithets, $5 may fully compensate the injury inflicted to my person and clothing; but $500 may be utterly inadequate to requite the sense of insult, the personal indignity, the public disgrace and humiliation. The extra $500 exacted may operate indirectly as a punishment; it may constitute an example to others, and also deter my assailant himself from repetitions of the offense in future; in law, however, it is simply compensation for the private wrong; a kind of indemnity which probably no court has ever refused to allow, when warranted by the circumstances.

But under the doctrine of exemplary damages, as announced by the instruction given in this case, the jury are not required to stop with the $5 for material injury, and $500 for lacerated feelings. They may turn to the domain of criminal law, and consider the public wrong; and they may add $1,000 more as a punishment to my assailant. The arrangement is highly satisfactory to me, since I have the pleasure of pocketing the additional thou-

sand dollars to which I am not entitled. But, as we have already seen, it hardly comports with correct legal principles.

The case at bar furnishes a good illustration of the doctrine under discussion. The jury are told that if they find certain facts to exist, they may award damages to plaintiff for:

1st. The actual pecuniary loss sustained.

2d. The peril occasioned in regard to personal liberty.

3d. The injury to his person and liberty.

4th. The injury to his feelings and reputation.

5th. The punishment of defendant.

The first four items comprise all the injuries for which plaintiff ought to recover; they all rest upon the theory of compensation for the private wrong, and are therefore in perfect harmony with the principles and procedure in civil actions; they furnish ample ground for discrimination by the jury, should they find the prosecution and imprisonment to have been malicious. Why not remit the punishment of defendant to a criminal forum?

The jury rendered a verdict for $2,780. How much of this sum was given as a punishment? Perhaps $1,000, perhaps more; yet under our Criminal Code, $500 would have been the maximum. When defendant is on trial in the criminal court, he cannot plead in bar payment of this penalty; he must, if convicted, discharge the additional fine assessed, or go to jail, if such be the sentence. Whatever may be the technical distinctions, he is in fact twice prosecuted, twice convicted and twice punished for the same offense; and one of these prosecutions, convictions and punishments is had without any regard for the leading principles obtaining in criminal procedure.

Concerning defendant's liability to indictment for false imprisonment under our statute, see *Slomer v. People*, 25 Ill. 70.

We are not prepared to say with Mr. Field, that the controversy of the books about compensatory and exemplary damages "is one which relates more to the use of terms than to practical results" (Field on Damages, sec. 73); nor with Judge Cole of Iowa — for whose legal acumen and views we entertain profound respect — that the difference on this subject between Prof. Greenleaf and Mr. Sedgwick may be only a "controversy as to the terminology of the law, rather than as to the extent of the right of recovery, or the real measure of damages."

These remarks must be based upon the supposition that the jury would award as heavy damages under the liberal rule of compensation above stated, as they would with the added element of punishment; a conjecture which it seems to us is hardly defensible from a legal standpoint. We deem no further argument necessary to show that the question is one of weighty importance. That it affects the fundamental distinctions between civil and criminal procedure; that it bears directly upon the legal rights, and in many cases also upon the constitutional rights, of the citizen.

In some of the states, courts distinguish between cases where the tort is punishable as a crime, and those where it is malicious but not so punished; exemplary damages being denied in the former, but allowed in the latter. See Sutherland on Damages, p. 738, and cases cited.

This distinction rests upon the constitutional and humane objections to dual prosecutions and punishments for the same offense; but grave doubts may justly exist as to the wisdom of preserving it.

The impropriety of judicially recognizing as criminal, that which is not so by statute or at common law; the incongruity and confusion arising from trial and punishment under the rules of evidence, pleading and practice controlling in civil actions; the injustice of denying defendant the benefit of principles and procedure maintained in criminal prosecutions; the manifest inequity of

awarding plaintiff something to which he is not en-titled,— these and other considerations may prove so powerful as ultimately to undermine everywhere the dis-tinction above mentioned.

It may in the end be considered safer and better, in all cases, to keep the two forums separate and distinct; to let the public protect itself through legislation and the principles of the common law. It is not unlikely that courts will in the course of time generally condemn the practice of blending the interests of the individual with those of society, and using a purely private action to redress a public wrong.

The most difficult cases in which to exclude the rule of damages as a punishment are those where its application rests upon gross negligence, and where no criminal pros-ecution can be sustained; there is often a feeling that complete justice cannot be done without punitive satis-faction. But those courts which adhere to the doctrine of exemplary damages in general are by no means unan-imous in applying it to this class of cases; and when so applied, the most guarded language is used, and the most careful limitations are imposed; it is said that the negligence must be "flagrant and culpable;" so much so that malice may "well be inferred or imputed to defend-ant." Field on Damages, sec. 84, and cases cited.

Why may not even this class of cases be safely limited to the rule of compensation? Is not this doctrine, as above explained, sufficient to meet all the reasonable demands of justice?

But it is sufficient for us to say that, in the case at bar, the objections to double prosecutions and punish-ments for the same offense are decisive.

As already suggested, the distinction above considered is not merely verbal. It makes but little difference what adjective or expression is used to designate the damages beyond those termed *actual* which may be awarded by the jury for injury to the feelings when the wrong is

accompanied by malice, provided the instructions clearly
indicate the proper limitation.   But it is believed safer
not to employ the words *exemplary, vindictive, punitory*,
or either of them, as there is danger of misapprehension
growing out of their literal meaning, notwithstanding
the accompanying explanations of the court.

It has been with no little reluctance that we have
arrived at the foregoing conclusion as to the doctrine of
punitive or exemplary damages.   The persuasive reasons
and strong array of authorities in support of the rule,
the corresponding convictions of a large part of the
bench and bar of the state, and the confusion that may
exist for a time, have impelled us to the most careful and
conservative deliberation.   But we feel that the doctrine
of compensation, as explained, is more in consonance with
the reason, the logic, the science of the law; that it is
more in harmony with the dictates of equity and justice,
and that the tendency of the courts and writers is favor-
able to its exclusive adoption,—more correctly speaking,
*re-adoption*.   We deem it wiser to accept and declare
the rule now, than to resist for a time and ultimately be
compelled to do so, when the confusion produced would
be tenfold greater than at present is possible.

Upon the subjects embraced by the foregoing discus-
sion, see the following authorities supporting or opposing
the views adopted in this opinion: 2 Greenleaf's Evidence
(13th ed.), text notes and cases, p. 235 *et seq.;* 1 Sutherland
on Damages, text notes and cases, p. 716 *et seq.;* Field
on Law of Damages, text notes and cases, p. 64 *et seq.;*
Sedgwick on Meas. of Damages (6th ed.), text notes and
cases, p. 552 *et seq.;* 3 Parsons on Contracts, text notes
and cases, p. *169 *et seq.; Fay v. Parker*, 53 N. H. 342.

Several cases decided by this court refer directly or in-
directly to the subject of exemplary damages, viz.: *Kin-
ney v. Williams*, 1 Col. 191; *Nachtrieb v. Stoner*, 1 Col.
423; *K. P. R'y Co. v. Miller*, 2 Col. 442; *Western Union
Telegraph Co. v. Eyser*, 2 Col. 141; *K. P. R'y Co. v. Lun-*

*din, Adm'r*, 3 Col. 94; *Wall et al. v. Cameron*, 6 Col. 275.

In none of these cases does there appear to have been a serious contest upon this subject, by counsel. It is not considered at any length, or fairly adjudicated, in either of the opinions, though they contain remarks which seem to recognize the doctrine. In five of the cases the judgments below were reversed — four by this court, and one by the supreme court of the United States; and with a single exception, the principal ground of reversal was error in submitting at all to the jury, this branch of the measure of damages. Therefore, for this reason, in four of those cases, it was not necessary to determine the question, since, if the rule were held to exist, it had no application. In one of the remaining two, the reference to this class of damages was a casual remark by the judge who wrote the opinion, not necessarily required by anything in the record. While in the sixth, the instruction considered, simply told the jury that, if malice existed, they were "not restricted to the mere *corporeal injury* of the party;" which is in perfect keeping with the rule of compensation above announced.

But if it can be truthfully claimed that the views herein expressed are not in harmony with those cases or either of them, we feel constrained to hold that, to the extent of such conflict, those opinions should be modified.

In view of a retrial in the court below, we deem it necessary to consider a few other questions presented by the record.

The term *probable cause*, as used in actions for malicious prosecution, has been defined as "such a state of facts, known to and influencing the prosecutor, as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably and without prejudice, upon facts within the parties' knowledge, to believe or entertain an honest and strong suspicion that the per-

son accused is guilty." Hill on Torts, sec. 18, and cases cited.

Analyzing this definition, we discover the reason for the rule that, in cases like the one before us, malice may be implied from a want of probable cause. Persons of sufficient age and sound mind are presumed in law to act with ordinary prudence and discretion. And as in many other cases where wrong and injury result from gross negligence, upon proof that there was no probable cause, the law supplies a ·criminal intent. One cannot procure the arrest and imprisonment of another, without any reasonable ground of suspicion, and then avoid liability for the disgrace and vexation produced, upon the plea of innocent intent. If he is really free from wrongful motive, and yet no probable cause, within the foregoing definition, exists, he should pay these damages for his indifference or carelessness concerning the ·rights of others.

Counsel will observe that all the circumstances, as they appeared to the prosecutor at the time, enter into the question; and that in determining whether or not probable cause existed, the jury, so far as possible, place themselves in the position of the prosecutor. This expression does not mean actual guilt, but such circumstances as warrant the prosecutor, acting as a man of reasonable caution and discretion, and free from malice or prejudice, in "entertaining an honest and strong suspicion that the person accused is guilty." See Field on Damages, sec. 690, and cases cited; Stone v. Crocker, 24 Pick. 81.

Adopting this view of the law, it follows that we must overrule counsel's remaining objection to the instruction already considered. So far as this objection is concerned, we think that this instruction, coupled with the other instructions given, fairly states the law.

But while it is correct to say that a wrongful intent may be implied from the absence of probable cause, it does not follow that all testimony of actual malice must

be excluded. It is true that if there be probable cause for the arrest, the prosecutor is not required to respond in damages, even though his mind may not be free from improper motive. Yet acts of the prosecutor, and circumstances connected with the transaction, affirmatively showing actual evil intent, may always be given in evidence. If a want of probable cause appear, the jury, in estimating damages, may properly consider the degree of malignity displayed by the prosecutor. If, through unreasonable and unnecessary abuse and oppression, the annoyance, contumely and sense of outrage inflicted are enlarged, heavier damages should be allowed, under the rule of compensation, than if the malice were wholly implied from the absence of probable cause.

We are therefore of opinion that no error was committed in receiving testimony as to what took place prior to appearance before the justice. This evidence was not admitted as a ground of damages in itself; under the pleadings it could not be so received. But the insults, oppression and duress thereby shown continued through the six or seven hours immediately preceding arrival at the justice's residence; they were closely connected with the proceedings before that officer, and bore directly upon the intent with which appellant acted in instituting such proceedings, and in procuring the warrant and subsequent imprisonment.

The sixth instruction, relating to the disposal of mortgaged property, should not have been given; it is not supported by any evidence in the cause, and its effect might possibly have been misleading to the jury.

In view of the uncontradicted evidence in behalf of the plaintiff below, now before us, we do not consider the verdict excessive; under a correct rule of damages, it would not be disturbed on account of the sum awarded. But we cannot say that a portion thereof was not given for the purpose of punishing appellant.

The judgment is reversed and the cause remanded for a new trial.     *Reversed.*