## FRENCH, APPELLANT, v. DEANE, APPELLEE.

1. PLEADING.

It is sufficient in a complaint for enticing away plaintiff's wife, or for seduction, to allege the ultimate facts, without a statement of the arts made use of to accomplish the purpose.

2. EXEMPLARY DAMAGES.

Prior to the act of 1889, punitive or exemplary damages were not recoverable.

3. CONSTITUTIONAL LAW—RETROSPECTIVE LAWS.

The law, as construed by a court of last resort, is as well protected by constitutional inhibitions against ex post facto and retrospective laws as if the decisions had been enacted into statutes.

4. STATUTORY CONSTRUCTION—EXEMPLARY DAMAGE ACT.

To justify exemplary damages under the act of 1889, there must be some wrong motive accompanying the wrongful act, or a reckless disregard of plaintiff's rights. A wrongful act done intentionally is not, as a matter of law, necessarily malicious.

5. MEASURE OF DAMAGES.

The act of 1889 with reference to exemplary damages having no application to the case, the plaintiff must be limited in his recovery to a liberal rule of compensatory damages, under which he may recover

for all direct and proximate losses occasioned by the tort; for the physical pain, if any, inflicted; for his mental agony, lacerated feelings, wounded sensibilities; but he is not entitled to punitive or exemplary damages.

6. WITNESSES—PRACTICE.

One who is sued for enticing away the plaintiff's wife is entitled to an instruction to the jury that she could not be called as a witness without her husband's consent, and that nothing unfavorable was to be inferred against the defendant from her failure to testify.

*Appeal from the District Court of Arapahoe County.*

ACTION by appellee, plaintiff below, for the enticing away of his wife. Judgment for plaintiff for $25,000. Defendant appeals.

Plaintiff in his complaint alleges, *inter alia*, his marriage with Clara R. Deane in the year 1870.

" That said plaintiff has at all times from the date of his said marriage lived in the city of Denver with his wife and has provided her with a comfortable home, and at all times his said wife has lived with him at his said home happily and contentedly until the occurrence of the matters hereinafter set forth."

" That said defendant, about the year 1876, became and was acquainted with the said wife of this plaintiff, and shortly afterwards the said defendant commenced to acquire, and did acquire, and since then has had and now has, an improper influence over the wife of said plaintiff, and the said defendant, by means of said undue influence, did, maliciously and with the intent to injure the plaintiff, and to deprive him of the comfort, society and assistance of his said wife, seduce the said wife and seduce and alienate her affections away from the plaintiff and to the defendant, and the said defendant further intending to injure this plaintiff and to deprive him of the comfort, society and assistance of his wife, did on or about the first day of December, A. D. 1889, entice her away from the said plaintiff against his consent, by means whereof among other things his home has been made desolate and ruined."

"That by reason of the premises, the plaintiff has been and still is wrongfully deprived by the defendant of the comfort, society and aid of his said wife, and has suffered great distress in body and mind in consequence thereto, and is damaged in the sum of $100,000."

"Wherefore, the said plaintiff prays judgment against the defendant in the sum of $100,000 and costs of suit."

The answer puts in issue the allegations of the complaint.

Mr. W. S. DECKER, Mr. T. J. O'DONNELL and Messrs. BENEDICT & PHELPS, for appellant.

Messrs. THOMAS, BRYANT & LEE and Messrs. WELLS, MACON & FURMAN, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Among the fundamental rights of husband and wife is that each has the right to the society and companionship of the other. At common law there were two forms of action that might have been maintained by the husband for offenses against the marital relation; one for enticing the wife away and the other for seduction. And these actions, subject to some modifications by statutes in a number of the states, still exist. Whether the present action be treated as one for enticing the wife away or for seduction, it is sufficient in either event to allege in the complaint the ultimate facts, without a statement of the arts made use of to accomplish the illegal purpose. *Brown v. Kingsley*, 38 Iowa, 220; *Hodges v. Bales*, 102 Ind. 494; *Rees v. Cupp*, 59 Ind. 566. No objection was made to the complaint by demurrer or motion in the court below. If the defendant desired a separate statement of the causes of action alleged, he should have interposed a motion for that purpose at the first opportunity. At the trial the jury were instructed that the plaintiff might recover without proof of seduction, but that such proof was competent for the consideration of the jury in determining

whether or not the affections of the plaintiff's wife had been alienated, and also in aggravation of damages. Counsel for appellant seem to have been in doubt until the instructions of the court were read as to the precise charge upon which damages were claimed. Their request for instructions contain repeated references to the charge of seduction, and specific instructions are asked thereon. The court in its charge, however, treats the action as one simply for enticing away the plaintiff's wife. Much uncertainty and confusion might have been avoided had the issues been clearly defined and understood at the outset. Upon a charge of seduction we do not think that there is room for serious contention for vindictive or punitive damages, as the law stood at the time the seduction took place, if at all. In fact, if such damages may properly be given in this case at all it is because of the act of 1889.

The question of the measure of damages is by far the most serious question for consideration in this case. Dependent upon and secondary to it are many questions with reference to the admissibility of evidence, such as of the financial standing and ability of the defendant. If recovery in this case must at best be limited to a liberal rule of compensatory damages, it will be apparent that the financial ability of the defendant has no right place in the controversy, as it is only where exemplary or punitive damages may be recovered that such evidence is admissible. Prior to the change made by the statute of 1889, no principle was better settled in this state than that punitive or exemplary damages could not be allowed in any civil case. *Murphy v. Hobbs*, 7 Colo. 541; *Greeley, S. L. & P. Ry. Co. v. Yeager*, 11 Colo. 345.

The *Murphy-Hobbs case* is properly regarded as the leading case upon the subject in this state. The opinion was written by Judge Helm. The court upon a careful review of the authorities reached a conclusion against the right to award such damages in any civil case where the offense is punishable under the criminal law. The logic and reason of the argument not only served to weave the conclusion into

the warp and woof of our law, but to cause the rule to be extended in subsequent cases to the exclusion of punitive damages in all civil actions of whatsoever nature.

In the case of the *Greeley S. L. & P. Ry. Co. v. Yeager, supra*, it is expressly determined that punitive damages should not be allowed in any civil action. The opinion was written by the experienced judge presiding at the trial of the present case in the district court, who was then one of the supreme court commissioners. In the course of the opinion, which was concurred in by this court, the writer says, speaking of the measure of damages:—

"The rule of compensation is sufficient to give the injured party all that he is entitled to, and to go beyond that, and usurp the powers of the state in the infliction of punishment, may well be challenged as a 'sin against sound judicial principle;' a sin which cannot be made to stand for the right by an adherence to it." The same rule has been announced in a number of recent cases. See *Republican Pub. Co. v. Miner*, 12 Colo. 77; *Republican Pub. Co. v. Mosman*, 15 Colo. 399; *Howlett v. Tuttle*, 15 Colo. 454.

This was the state of the law at the time of the convening of the seventh general assembly. Before considering the change made at that session we pause to say that the law as theretofore construed by the court of last resort was protected by the constitutional inhibitions against *ex post facto* and retrospective laws, equally as well as if the decisions had been enacted into statutes. Wade on Retroactive Laws, § 177; *Lambertson v. Hogan*, 2 Pa. St. 22; *Lee County v. Rogers*, 7 Wall. 181; *Chicago v. Sheldon*, 9 Wall. 50; *City v. Lamson*, 9 Wall. 477.

If exemplary damages are proper in this case, it is because of the following statute passed by the general assembly and approved by the governor upon the 19th day of February, 1889. The statute does not contain an emergency clause, and hence did not go into effect until May 20, 1889. It reads as follows:—

"Section 1. That in all civil actions in which damages shall

be assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, such jury may, in addition to the actual damages sustained by such party, award him reasonable exemplary damages." Session Laws of 1889, p. 64.

The substance of this statute is embodied in the charge given at the trial, but in addition thereto the jury were instructed, "In law a wrongful act done intentionally, without a legal justification is done maliciously." This instruction is erroneous. To justify exemplary damages there must be some wrong motive accompanying the wrongful act, or a reckless disregard of plaintiff's rights. Even when the wrongful act results in the death of a human being, malice is not necessarily to be implied. Sedgwick on Damages, sec. 363; *Miller v. Kirby*, 74 Ills. 242; *Inman v. Ball et al.,* 65 Ia. 543.

The evidence introduced by the plaintiff to support his cause of action shows among other things that plaintiff and Mrs. Deane were married in the year 1870; that they lived as man and wife until some time in the fall of 1889, when a separation took place; that defendant French became acquainted with Mrs. Deane some time in the year 1877; that for ten years they were more or less intimate; that during this time the defendant frequently took Mrs. Deane out riding, sometimes returning late in the evening; that he frequently called at her residence in the absence of Mr. Deane and occasionally accompanied her to the theater. One witness testified to seeing Mr. French kiss Mrs. Deane upon one occasion, and that he was seen with her in the sleeping room occupied by Mrs. Deane; that his attentions to her continued without interruption until the fall of 1887; that in the fall of that year the plaintiff and his wife visited St. Louis upon the occasion of the holding of the annual encampment of the Grand Army of the Republic; that the defendant took the same train and several times engaged Mrs. Deane in conversation on the train; that he took rooms near the rooms oc-

cupied by the Deanes, and that he did so by a previous arrangement made with the landlord, and that his attentions to Mrs. Deane during their sojourn of a few days in the city of St. Louis were quite marked; that these attentions continued during at least a part of the year 1888; that in the spring of 1889 Mrs. Deane went east and made a protracted visit, not returning to Colorado until the month of August following.

It is but fair to the defendant to say that he denies absolutely the more serious circumstances in evidence against him; claims that his relations with the Deanes were those of intimate friendship; that his relations with Mrs. Deane were known to and acquiesced in by Mr. Deane, and that they were prompted solely by motives of friendship and not improper; that no inducement was ever held out by him for her to separate from her husband. Other evidence was introduced by the defense tending to show that Mr. Deane was addicted to the use of liquors and morphine; that he quarreled with his wife about property, the title to which was in the name of Mrs. Deane, and that he commenced suit to recover the same or an interest therein. Deane admits the using of morphine but says that it was prescribed by his physician.

The evidence shows that the Deanes separated in October, 1889; that afterward a reconciliation took place and the marital relations were resumed, but that a final separation took place in April, 1890. It is not our purpose to enter into the details of the evidence adduced by the parties, except as the same is necessary to show the nature of the proof introduced

The act of 1889 in relation to exemplary damages went into effect May 20, 1889. The evidence shows that defendant discontinued his visits to Mrs. Deane sometime in the year 1888. One witness testifies that on an afternoon in April, 1889, he saw them together; that they rode in a street car from some point down town to the Deane residence, where they alighted and stood for some minutes talking together near the front gate. With this single exception there

is no evidence that plaintiff in error met Mrs. Deane after the year 1888, or that any intercourse of any kind or character whatsoever took place between them after that date, while the evidence shows affirmatively that no communication passed between the parties after the act of 1889 took effect.

In this state of the record we are to consider the proper measure of damages in case of recovery. On behalf of appellant it is claimed that the statute of 1889 does not apply in this case; that it was not the intention of the legislature to make it applicable to past transactions, and that if such had been the intention it would be in violation of both the state and national constitutions. On the contrary, the appellee argues that the facts show a continuing tort; that the cause of action did not accrue to appellee until the separation actually took place, and that the law in force at the time of such separation should control. It is also contended that the statute is remedial in character and is applicable to past as well as future transactions.

The statute does more than change the form of the remedy; it provides for an increase of the measure of damages *ad libitum*. It is penal in character. Exemplary or punitive damages are allowed as a punishment to the wrongdoer and as an example to others. Such damages rest upon the right to punish and not the right of the injured party to compensation for the wrong done. In the case of *Murphy v. Hobbs*, *supra*, it is said with reference to the form of the action, in considering another provision of the constitution: "When the convention framed, and when the people adopted, the constitution, both understood the purpose of this clause to be the prevention of double prosecutions for the same offense. Yet, under the rule allowing exemplary damages, not only may two prosecutions, but also two convictions and punishments, be had. What difference does it make to the accused, so far as this question is concerned, that one prosecution takes the form of a civil action, in which he is called defendant? He is practically harassed with two prosecu-

tions and subjected to two convictions; while no hypothesis, however ingenious, can cloud in his mind the palpable fact that for the same tort he suffers two punishments." See also, Sedgwick on Damages, sec. 360, and cases cited.

Although the prohibition against *ex post facto* laws is aimed at criminal cases, it cannot be evaded by giving a civil form to that which in its nature is criminal. The act of 1889 changed the existing law by authorizing punitive damages in certain cases, and as incidental thereto it changed the rules of evidence to the disadvantage of the defendant by allowing evidence of his financial standing; the admissibility of such evidence depending upon the right of allowing punitive damages. In the Test Oath cases the supreme court of the United States says: " The constitution deals with substance, not shadows. Its inhibition was leveled at the thing, not the name. It intended that the rights of the citizen should be secure against deprivation for past conduct by legislative enactment, under any form, however disguised. If the inhibition can be evaded by the form of the enactment, its insertion in the fundamental law was a vain and futile proceeding." *Cummings v. The State of Missouri*, 4 Wall. 277.

To hold that such a statute as the one under consideration can be made applicable to past transactions would be in violation of the national constitution prohibiting the passage of any *ex post facto* law, and in violation of not only a similar provision of the constitution of this state, but also of the inhibition against retrospective legislation. It not only permits the damages in cases controlled by it to be doubled and trebled, but, as we have said, they may be increased at the will or caprice of the jury. Moreover, in cases of this character upon a finding by a jury that the defendant was guilty of malice, fraud or willful deceit, the plaintiff would be entitled to an execution against the body of the defendant. Sec. 2164, Mills' Ann. Stat. Section 11 of article 2 of our Constitution inhibits the passage of any *ex post facto* law, or law impairing the obligation of contracts, or retrospective in its operation. The word retrospective as here used has reference to civil cases, and as to such cases it is

synonymous with the term *ex post facto*, as applied to the criminal law.

In *Kring v. Missouri*, 107 U. S., p. 221, it is said : " This term (*ex post facto*) necessarily implies a fact or act done, *after* which the law in question is passed. Whether it is *ex post facto* or not relates, in criminal cases, to which alone the phrase applies, to the time at which the offense charged was committed. If the law complained of was passed before the commission of the act with which the prisoner is charged, it cannot, as to that offense, be an *ex post facto* law. If passed after the commission of the offense, it is as to that *ex post facto*, though whether of the class forbidden by the constitution may depend on other matters. But so far as this depends on the *time* of its enactment, it has reference solely to the date at which the offense was committed to which the new law is sought to be applied. No other time or transaction but this has been in any adjudged case held to govern its *ex post facto* character."

" A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, is to be deemed retrospective or retroactive." Sedgwick on Construction of Stat. and Const. Law (2d ed.), p. 160.

It is contended that the offense charged in this case was not completed until after the act of 1889 took effect. As we have already said, the charge in this case is not only for alienating the affections of Mrs. Deane and enticing her away from her husband, but it also includes seduction. The evidence introduced tends to establish both charges. If there was as a matter of fact seduction, it was consummated long before the enactment of the statute allowing punitive damages, and it has not and cannot be maintained that upon this charge such damages are warranted in this case. Is it possible that the plaintiff after bringing forward evidence upon such a charge may, in any case, at the last moment, when met by the rule against punitive damages, shift his base and

evade the law, by instructions such as were given in this case ? The charge of seduction is not directly withdrawn from the consideration of the jury, but it is said that seduction if found is only to be considered in aggravation of damages. We think this amounts to an evasion of the law which ought not to prevail. While this court has no disposition to curtail the legitimate operation of the act of 1889, it cannot, on the contrary, extend the statute so as to make the same applicable to transactions that took place before the passage of the act. To do so would be to overturn the fundamental rule requiring all statutes to be construed prospectively unless a contrary intention is clearly manifest, and also to violate one or more provisions of the national and state constitutions.

Here the entire transaction of which complaint is made took place before the statute took effect. No spoken or written word, no act of French with reference to Mrs. Deane is shown to have occurred thereafter.

Our conclusion is that under the facts as presented upon the record, the statute of 1889 with reference to exemplary or punitive damages has no application ; that the plaintiff must be limited in his recovery to a liberal rule of compensatory damages. Under such a rule he may recover "for all direct and proximate losses occasioned by the tort; for the physical pain, if any, inflicted ; for his mental agony, lacerated feelings, wounded sensibilities," but he is not entitled to damages assessed merely as a punishment to the defendant or as an example to others. *Murphy v. Hobbs, supra.*

Of the instructions refused the twelfth should have been given. By it the defendant sought to have the jury informed that the law of this state did not permit Mrs. Deane to be called as a witness without the consent of her husband, and that consequently nothing unfavorable was to be inferred against the defendant from her failure to testify.

The judgment of the district court must be reversed and the cause remanded.

*Reversed.*

MR. JUSTICE ELLIOTT dissents.