Thomson, J.,
delivered the opinion of the court.
The subject-matter of this action is the following publication concerning the appellee made by the appellant in its newspaper, The Denver Republican:
“IN THE PROPER PLACE.
“ JOHN CONROY JAILED EOR MAKING ASSAULTS ON LITTLE GIRLS.
“ John Conroy was yesterday arrested by Detectives Ingersoll and Ustick for assault and battery. Conroy is oxle of the mean, low-lived counterfeits on manhood who make a practice of enticing little girls from their homes and then attempting assault. Two children living at 935 and 945 Seventh avenue, on Tuesday were decoyed by Conroy. He did not succeed in his dastardly purpose, being drivexr from it by the cries of the girls. Yesterday Conroy was identified by the girls’ mothers and his arrest followed.”
The defendant answered the complaint, denying its several allegations, averring that the published statements were true, that they were published in good faith, believing them to be true, and that they were privileged. Upon the trial of the cause the jury found a verdict in favor of the plaintiff for |1,500, and judgment was rendered upon the verdict, from which the defendant appealed.
If the publication was not privileged it was clearly libelous; but the claim of privilege is made and we shall examine it. *264 If the writer had contented himself with giving the fact of the arrest and the charge upon which it was made, the claim of privilege would be entitled to consideration, but he proceeded upon his own responsibility to brand the plaintiff with an opprobrious epithet, and to assert him guilty of the most disgraceful and infamous of offenses. If the statements were false the mere fact that the defendant believed them to be true does not justify their publication; and, giving the words the force and effect which were obviously intended, we do not understand upon what theory the claim of privilege can be made in their behalf.
In White v. Nicholls, 3 How. (U. S.) 266, Daniel, J., classifies privileged communications as follows: 1 — Publications made in the bona fide discharge of a public or private duty, legal or moral; or in the prosecution of the rights or interests of the author. 2 — Anything said or written by a master in giving the character of a servant who has been in his employ. 8 — Words used in the course of a legal or judicial proceedi ng. 4 — Publications duly made in th e ordinary mode of parliamentary proceedings. It is only under the first of the foregoing classes that a claim of privilege can be made in this case. There is no special privilege attached to a newspaper as such, and nothing Avhich Avould not justify an individual in his defamatory statements would justify it. It is evident that the article complained of was published as a matter of local news, and not in the discharge of any duty owed by the defendant to itself or others; and the publication was therefore not privileged. See Foster v. Scripps, 39 Mich. 376; Sheckell v. Jackson, 10 Cush. 25; Mallory v. Pioneer-Press Co., 34 Minn. 521.
Evidence was introduced by the defendant tending to prove the truth of the statements; and other evidence of a rebutting character was given in behalf oE the plaintiff. Some questions are made upon the rulings of the court admitting and rejecting evidence, but we do not discover any error in these rulings of sufficient importance to warrant a reversal of the judgment.
*265 Several instructions requested by the defendant were refused. Some of them did not correctly state the law, and were therefore properly refused; while those to which the defendant was entitled were substantially embraced in the instructions given. In a certain sense it may be said that pecuniary loss is the gist of an action for libel, because, in theory, the damages sustained are compensated in money; but it would have been misleading and erroneous to instruct the jury that their verdict must be confined to the pecuniary loss actually proven. Where, as in this case, the words are actionable per se, the law presumes damages. No special evidence concerning them is required. The real gist of the action is the injury to the plaintiff’s reputation. When that is clear there is no need to inquire further; and it is for the jury to determine what amount, by way of compensation, shall be allowed for the injury. Neither would it have been proper to instruct the jury that, to entitle the plaintiff to a verdict, express malice must be shown. The language being libelous upon its face, and not being within any of the classes of privileged communications, the law implies malice in the author, whether, in fact, it existed or not; and evidence of malice is not required outside of the proof of the publication itself.
The instructions given by the court clearly and correctly presented the law applicable to the case, with one exception; but that exception is fatal to the judgment. Among the instructions given was this:
“In a suit for libel the injury to the plaintiff’s reputation is the gist of the action, and the damages are not necessarily confined to the pecuniary consequences. In such case the jury may take into consideration, in making their award, the actual damages, if any, sustained, and may also award what is known as exemplary or punitive damages in the nature of punishment and to deter others from a similar offense.”
Before the passage of the act of 1889, it was settled in this state by a series of adjudications that exemplary damages could not be recovered in any civil action. Murphy v. Hobbs, *266 7 Colo. 541; G. S. L. & P. Ry. Co. v. Yeager, 11 Colo. 345; Rep. Pub. Co. v. Miner, 12 Colo. 77.
That act is as follows:
“ Section 1. That in all civil actions in which damages shall be assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party’s rights and feelings, such jury may, in addition to the actual damages sustained by such party, award him reasonable exemplary damages.” Session Laws, 1889, p. 64.
This statute did not operate to change the rule, as it had been established, in any case where nothing is shown except the naked wrong. In French v. Deane, 19 Colo. 509, where this act was the subject of discussion, Chief Justice Hayt said: “ To justify exemplary damages there must be some wrong motive accompanying the wrongful act, or a reckless disregard of plaintiff’s rights.” In libel the law implies malice from the fact of the publication, but no actual malice may exist. The publication may be made in a belief of its truth, and without any desire or intention to do the aggrieved party an injury. Where such is the case, the statute does not contemplate the recovery of more than compensatory damages. Exemplary damages can be awarded only where something in the nature of express malice appears. The publication must not only be libelous per se, but it must be attended by circumstances of fraud, malice or. insult, or a wanton and reckless disregard of the injured party’s rights and feelings. The question of the existence of such circumstances must be submitted to the jury by appropriate instructions, and an instruction which submits to them the question of exemplary damages, without also submitting to them the question whether the facts upon which the statute gives the right to such damages have been proved, is fatally defective. For these reasons the instruction in question was erroneous, and the judgment must therefore be reversed.

Reversed.